Judge Muxs
delivered tbe opinion.
This is an action of trespass, assault, battery and imprisonment, brought by a free person of color, against ajustice of the peace and constable, in their individual characters. Tlie justice pleaded bis office, and the faet, that the plaintiff had lifted bis hand in opposition to a white man, who had proved the fact before him, and that he had issued his warrant to apprehend the piamtiff, who was. accordingly brought before him, and that he gave sentence that for the offence the plaintiff should receive thirty lashes on his bare back, according to an act of assembly in such cases provided, and avers this to be the same trespass in the declaration mentioned. The constable likewise justifies by al-ledging his office, and the execution of tbe warrant, and the infliction of the stripes, pursuant to the sentence of the justice.
To these pleas of the defendants, the plaintiff replied in avoidance, that he was a free person of color. To this replication the defendants demurred. The court below sustained the demurrer, and gave judgment for the defendants. To reverse this judgment, this wnt of error is prosecujed.
The section of the statute relied on in these pleas/ yril} *71 fee found in 2d Littell, 116, and reads as follows: — “Tf any “negro or mulatto, or Indian, bond or free, shall, at any “time, lift his or her hand in opposition to any person not “being a negro, mulatto or Indian, he or she, so offending, “shall, for every such offence, proved by the oath of the “party, before a justice of the peace of the county where “such offence shall be committed, receive thirty lashes on “his or her bare back, well laid on by Order of such jus“tice.”
f^perToms of color to " ra¡s¡njí ⅛ h nd ⅛ op* position to a ^ repealed1* by the law “t° suppress assemblies of tire people, ' p The law
It is contended for the plaintiff in error, that this section of this statute is repealed by the act to suppress riots, routs, unlawful assemblies of the people, and breaches of the peace, which repeals all laws within its perview. And if it is not repealed, that it is contrary to the constitution of this state, and therefore void; and that in either case the justice or constable could not justify under it.
On the contrary it is contended, that this section is not repealed; and if it is not, that it is consistent with, and does not contravene any of, the provisions of tiie constilu-lion, and that the legislature might adopt, this punishment, notwithstanding its cruelty, with regard to white persons. But it is further contended, that although this section may contravene the provisions of the constitution, yet free per-*ons of color are no parties to our political compact, and of course are not entitled to its privileges or shielded by its provisions, and that they are subject to any regulation which the legislature may adopt, although such regulations are contrary to the constitution in their terms. And, finally, it is insisted, that if all these points are against the defendants in error, yet the one being a judicial officer, cannot be responsible for this error in judgment; and the other, being a ministerial officer, and not entitled to judge of the matter, but bound to execute process without enquiring inte its validity, neither can be responsible.
The act to suppress riots, routs and unlawful assemblies of the people, which is passed as a substitute for another of the same nature, previously adopted, does repeal a!! acts coming within its-perview. The fair construction of this repealing clause is, that it repeals all statutes which provide punishments for the same offences; the punishment of which is fixed by that act. The enquiry then is, does this law provide a punishment for the same offence which is directed to be punished bv the act first recited? The latter act provides the punishment for riots, routs, unlawful assent- *72 t»líe%br tbe people, and breaches of the peace. Riots, Touts and unlawful assemblies of the people, being well defined tn criminal, law, to be the combination of at least three or more, ih perpetrating, attempting to perpetrate, or conspiring to effect some mischievous design, to tbe disturbance cf the peace of society, cannot, it is evident, include within them, or either of them, the crime in question. The wpt'ds, breach of tbe peace, then, must include it, if it be included at all. There is a breach of tbe peace in every criminal offence; but someof them includes far more. The question then is, is there any single crime, or offence, or class of offences, which are included under the denomination breach of the peaces as a technical term, so that by that appellation they may be distinguished from others? In I Hawkins, 282, we are told “that inferior offen-ces more immediately against the subject not capital, either amount to an actual disturbance of the peaces or do not.” The same author proceeds, page 2G3, to point out and class those offences, which amount to a breach or actual disturbance of the peace, and he divides them into two kinds, to wit, such as may be committed by one or two persons, and Such as require a greater number. Those which require a greater number, be defines to be riots, routs, and unlawful assemblies, which are expressly provided for by tbe repealing statute, which we are considering, and cannot, as we have said, include the crime in question. Those which may be committed by one or two persons, is defined to be assaults and batteries, affrays and forcible detainers. As to forcible detainers, they have no resemblance to the crime in question. But affrays and assaults and batteries have, and are included within the crime provided against by the statute pleaded by the defendants, and as the term, breach of the peace, is used in the repealing statute, and the same statute provides specially for riots, routs, and unlawful assemblies, which are part of tbe offences included within tbe generic term, breach of the peace, the term itself can have no force or meaning in the statute, unless it does actually include affrays and assaults and batteries. This wc conceive is the true meaning of the words as used in tiie repealing act, and of course it does provide a punishment for affrays and assaults and batteries, and all former acts, providing a punishment for these offences; and with them, the statute, relied on by the defendants in error; so far as that act provides a punishment for assaults; *73 batteries or affrays, by free persons of color, is repealed.— We are aware that it has been contended by many, that /this statute, now relied on as repealing the former, is unconstitutional, because it provides for the punishment of offen-ces said io be indictable, without the intervention of a grand jury, and an indictment first found. Be this as it may, we are under no necessity of now deciding the question. It was competent for the legislature in the same act to repeal any former one, within its perview, although eve ry provision in the repealing act was unconstitutional. We are then of opinion, that the statute relied on by the defendants, was repealed as to all affrays, assaults and batteries, committed by free persons of color, and that their casé comes under the latter act
It is competent for the legislature to repeal a-?y act, tho* every other clause in the repealing sta* tute may be imeonstim-tional.
The act firsi referred to uncoil* titufiMia) iij so fur as it subjects the free p rsom of color to corporal pun-ishmerr for raising his hand in op« position to á a white person, if it be done in self defence, and in s(f fay as it infringes the privileges secured by the 10th s« c. of Uie 10th aft.
, We have before said, that the act relied on by the defendants, included within it affrays, assaults aod batteries by free persons of color. But it in fact includes far more, and affrays, assaults and batteries are not the only offences which come within its letter, and therefore as to these other offences it is not repealed. Its expressions, “lift Ais or her hand, in opposition to any person,'” includes many acts which will not be either an affray or assault or battery. It is not necessary, according to the letter of the act, that this lifting of '■'■hand in oppoHtión,” should be so directly against the person as to commit cither. It is not necessary that it should be done in an angry or threatning manner. It may be done m self defence, or in warding off injury, or in repelling attempts on the virtue of the female of color, by an intended ravisher. Another remarkable feature exists in the act. The proof is pointed out. The oath of the party complaining is conclusive, and the justice musí inflict the punishment, although the proof may be untrue, and he disbelieves it. This extensive nature of the act imposes upon us the disagreeable necessity of deciding upon its constitutionality, so far as it operates on free persons of color.
In deciding this question, we shall not long tliscant upon the severity of the act, and its want of those mild features which characterise the rest of our code; nor can they have much influence in deciding this question. For however severe, cruel and rigorous its features may be, if it does not éontravene the constitution, it must be executed, till tiie legislative power of the government shall see cause to change it. If would, however, be difficult to exempt this section from the imputation of cruelty, within the meaning of tbs *74 15th section of the 10th article of the constitution, so faf as the act subjects a free person of color to thirty lashes, for lifting his hand in opposition to a white person who was attempting wantonly to violate his or her person, contrary to the peace and good order of society. That section provides, “-That excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.” If a justice of the peace, or any other tribunal, should, under (his act, inflict the stripes against a free person of color, who lifted his hand to save him or herself from death or severe bodily harm, all men must pronounce the punishment cruet indeed. Several clauses of the constitution have been quoted, as repugnant to this statute. We shall, however, content ourselves with one more, and that is the !0th section of the 10th article, which provides, “That in all criminal prosecutions, the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against- him — to-meet the witnesses face to face — to have compulsory process for obtaining witnesses in his favor: and in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; that he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or properly, unless by the judgment of bis peers, or the law of the,land,” It is evident that this section contemplates more"kinds of public or criminal prosecutions, than those which are carried on by indictment or information. In all, it secures the right of being heard — of obtaining the nature and cause of the accusation — of confronting the witnesses, and disproving their evidence: — In those by indictment or information, a trial by jury is secured. Determining what is the meaning of, and included in, the words 11criminal prosecutions ” in this section, measurably controls the whole section. They evidently mean, any prosecution carried on in the name of the commonwealth, for any offence, or crime against society. The word “criminal” is used as opposed to civil suits or actions. The one includes all suits of the government, the end and design of which is the punishment of the accused; the other embraces all actions for individual redress, if this be not the meaning of the words, and they are designed to embrace the quality of those of-fences only of deeper dye and greater magnitude, usually denominated crimes, the section then absurdly makes a distinction between the whole class and those prosecuted by *75 indictment or information. For all those greater crimes are so prosecuted, and the convention must be convicted of the absu-dityof first providing for ni!, and then fora particular class, which included all. The act then in question, as it subjects the free persons of color to punishment, on the oath of the party, without trial, and without the possibility of contradicting and disproving his statements, is against both the letter and spirit of the constitution, and, of course, so far as it is not repealed, it has no force, and could furnish no defence or justification to the defendants in error.
Alt ho’ free persons of color s.re not parses o our social compact, yet Utey have ni .ny privilege s sutured i in rein, and iiicve ar.p.hi to its protection*
But we are still met by the argument, that free persons •f color are not parties to the political compact. This we cannot admit, to the extent contended for. They are certainly, in some measure, parties. Although they have not every benefit or privilege which the constitution secures, yet they have many secured by.it. We need not take the trouble of enquiring homsfar they are, or are not, parlies. For, suppose the premises are admitted, the conclusion would not follow, that the legislature had a right to do with them as it chose, and that their acts on that subject could never be brought to a constitutional test. Although they are not parties to the compact, yet they are entitled to repose under its shadow, and thus secure themselves from the heated vengeauce of the organs of government. Aliens, who sojourn here, aud belong to another, and claim nothing of our government, but the right of passage, could not be taken up and hung by a justice of the peace, without a hearing, without an opportunity of proving themselves innocent, and without a jury, even if the legislature, by ⅜ solemn act, should direct it to be done. The tenth section ef the constitution, which we have quoted, restricts the powers of the legislature and every department of government. The powers which they are therein forbidden to exercise, they do not possess, and cannot exercise over any man or class of men, be theyaliens,free persons of color, or citizens. This is demonstrable from the last section of that article, which declares, “that every thing, in this article, is excepted out of the general powers of government, arid shall forever remain inviolate; and that all laws contrary thereto, or contrary to this constitution, shall be void.” But it is still insisted, that notwithstanding all this, the judicial act of one of the defendants, and executive character of the other, ought to secure them from fhis action.
A judicial officer is not lia--if <or er-roí ⅛ in judpf-men in casts \vii bin his jurisdiction;— but this ru\e does not hold ji he exercises aotlfority ■where he has none, or assumes jurisdiction without any pow-e*.
Hanson and Pope for plaintiff. Clay for defendants ia error.
ft is very true, that a judicial officer cannot be pnnishé{| for errors in judgment, on subjects within the scope of his authority, and over which he has jurisdiction. But this does not hold good when he attempts to exercise authority when he has none, and assumes jurisdiction without say power Hence it was decided in the case of Kennedy vs. Terrill and Duley Hard 490, that a justice of the peace was liable for issuing a warrant unknown to the provisions of the law If this doctrine be correct, in the case of aa illegal warrant, how much more so ought it to be in a case vvbere the constitution is violated? Ir is an instrument that every officer of government is bound to know and preserve, at his peril, whether his office be judicial or ministerial; and he cannot justify an act against its provisions, even with the authority of the legislature to aid him, however much that may mitigate his case.
The judgment of the court below must, therefore fc>e reversed with costs, and the cause remanded, with directions to overrule the demurrer, and for new proceedings to be had consistent with this opinion