Cross J. delivered the opinion of .the co.urt. The record shows that the appellant, a free negrp, was convicted in the .court below of a violation of the provisions of the act'apr proved the 20th Jan. 1843, entitled “An act t.o prohibit the emir gration &,c. of free negroes or free persons of .color into this state? and thereupon judgment was rendered accordingly. To reverse this judgment upon the ground that the act upon which it was founded is unconstitutional and void, is the object .of the appeal. The proceedings appear to have been instituted up.ojj the fourth section of the act, which provides “ That every free, negro or mul.atto, who may have emigrated to this state prior to the first day of July 1843, shall on or before the said first day of July, enter into bond to the state of Arkansas with good and sufficient security for the use of any county, or of any person that may be damnified by' such negro or mulatto, in any sum not less than five hundred dollars, before the clerk of .the county court, conditioned for the good behavior of such negro or mulatto and to pay for the support of .such negro or mulatto in case'he shall at any time thereafter be unable to support .himself and become .chargeable to any county in this State, and also to pay and make good to any person in this State any injury or loss which they may sustain either in their person, money or property of every description by the wrongful acts .or misconduct of said negro or mulatto.” See Ark. Pamph. Acts, 1842-3 p. 62. The legislature no doubt.intended not only this section but the entire act as a measure of police, necessary to the security and well being of the -people of the State. In this view we are unable to perceive any clause or provision of either the federal or State constitution, with which it conflicts. If any it is that .clause of the former which declares that “The citizens of teach State shall be entitled to all privileges and immunities of citizens of the several States.” Are free regroes or free colored persons citizens within the meaning of this clause I We think not. In recurring to the past history of the constitution, and prior to its formation, ,to that of the confederation, it will be found that nothing beyond a kind of quasi citizenship has ever been recognized in the .case of colored persons. It is a principle settled in all the states of the Union, at least where slavery is tolerated, that a colored person, although free, cannot be a witness where the parties are white .persons. See Treaties on the law of Slavery, by Wheeler p. 194 and references. In Kentucky the courts have said that “ although free persons jof color are not parties to the social compact, yet they are entitled to repose under its shadow.” Ely vs. Thompson, 3 Mar. 70: And againin Amy vs. Smith, 1 Litt. Rep. 327, that .“ prior to the adoption of the federal constitution, States had a righ¡t to make citizens of any persons they pleased, but as the constitution does not authorize any but white persons to become citizens cf the United States, it furnishes a presumption that none others were citizens at the time of its adoption.” The protection of their persons and the right of property is provided for to a humane and just extent. To assault, to maim or to murder a fr,ge person of color is as fully prohibited by our constitution and laws, as the like offences against on.eof the white race: and so, as^o depredations .upon their property or habitations. If citizens in a full and constitutional sense, why were they not permitted to participate in its formation? They certainly were not. The constitution was the work of the white race; the government, for which it provides and of which it is the fundamental law, is in their ’hands and under their control; and it could not have be,en intended to place a different race of people in all things upon terms of equality with themselves,' Indeed, if S,uch had been the desire, its utter -impracticability is too evident to -adrnit of doubt. The two races differing as they do in complexion, habits, conformation and intellectual endowments, could not nor ever will live together upon terms of social or political equality. A higher than human power has so ordered it, and a greater than human agency must change the decree. Those who framed the constitution, were aware of this, and hence .their intention to exclude them as citizens within the meaning of the clause to which we have referred. Another clause of the constitution declares that “ The powers not delegated to the United States by the constitution nor prohibited by it to the States, are reserved to the States respectively or to the people.” Art. 10 Amts: Under this provision, it will be seen, that no restriction is imposed upon State legislation. In our State constitution there is nothing either express or implied, with which, in our judgment, the act in question- conflicts, We entertain no doubt therefore as to the constitutionality of the net upon which the prosecution is based. Let the judgment be affirmed.