Commonwealth *v.* Clinton, Appellant.

Argued September 24, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Claude O. Lanciano,* for appellant.

*Jerome B. Apfel,* Assistant District Attorney, with him *Thomas Reed,* Assistant District Attorney, *James N. Lafferty,* Deputy District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY CARR, J., December 28, 1956:

Eugene Clinton and Thomas Houser were convicted in a trial before a judge without a jury of unlawful possession of burglary tools and of loitering and prowling in the nighttime. Clinton alone appeals and alleges that the evidence was not sufficient to warrant a verdict of guilty.

The record discloses that at about 11:15 p.m. on the night of October 24, 1954 police officers Devlin and Murray were cruising in a prowl car in the vicinity of 23rd and Manning Streets in the City of Philadelphia when they saw the two defendants on Manning

near 23rd Street. As the officers approached, the two men walked toward 23rd Street and turned the corner. Clinton started to get into a parked Oldsmobile coupe and Houser continued to walk North on 23rd Street. When the officers stopped and questioned these two men concerning their reason for being in the neighborhood, they denied knowing one another. Upon being taken to the police station for questioning, however, they admitted being well acquainted, Houser being Clinton's brother-in-law. In the back seat of the automobile were found four electric drills, a screw driver, a hatchet and a three-foot crowbar. On Houser's person were found three bits for the electric drills and one cold chisel.

On the North side of Manning Street between 23rd and 24th Streets is a flower shop and on the South side are private dwellings.

At the trial Clinton testified that on the afternoon of Sunday, October 24, 1954, he and his brother, Edward Clinton, were working on the installation of built-in television and music systems at two restaurants in the City of Philadelphia. Eugene's Oldsmobile was used by the two brothers in travelling to these jobs. About 6:00 p.m. they returned to Eugene's apartment where both were living and had dinner. After dinner Eugene took his car to Houser for repairs to the muffler, and while the repairs were being made, visited some friends nearby, returning to Houser's garage or shop shortly before 11:00 p.m. The work having been completed they got in the car and started for a test ride, Houser driving. Near the intersection of 23rd and Manning Streets, Houser stopped the car and both men got out, Houser stating that he was going around the corner to urinate and Clinton to get in the driver's seat. Clinton stated that he separated from Houser

and denied knowing him when the police arrived because he did not want to be arrested for what Houser had been doing. The tools found in the car and on Houser's person belonged to Edward Clinton and had been used that afternoon at the restaurants where they were working.

The criminal statutes in question are: Act of June 24, 1939, P. L. 872, §904, 18 P.S. §4904 which provides: "Whoever has in his possession any tool, false-key, lock-pick, bit, nippers, fuse, force-screw, punch, drill, jimmy, or any material, implement, instrument or other mechanical device, designed or commonly used for break- ing into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, with the intent to use such tools or instruments for any of the felonious purposes aforesaid, is guilty of a misdemeanor . . .", and the Act of June 24, 1939, P. L. 872, §418, added May 27, 1949, P. L. 1900, §1, 18 P.S. §4418 which provides: "Whoever at night time maliciously loiters, or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor . . ."

In the recent case of *Commonwealth v. Dionisio*, 178 Pa. Superior Ct. 330, 116 A. 2d 109, President Judge RHODES discussed at length the statute concerning possession of burglar tools and set forth the three elements which the Commonwealth must establish beyond a reasonable doubt in order to sustain a conviction. They are: 1. Possession by the defendant; 2. The tools are such as are within the purview of the Act; 3. Possession by the defendant with the intent to use the tools for any of the felonious purposes set forth in the Act.

We are of the opinion that the Commonwealth met this burden in the present case. Some of the tools were found on the person of one of the defendants and the remainder in the back seat of an automobile owned and operated by the appellant. It was not necessary that the tools be found on his person. Although the tools found here may be used for legitimate and lawful purposes, the same may be said of most or all of the tools described in the Act. If they are suitable for felonious breaking and entering, it is immaterial that they can be adapted also for lawful uses. The intent to use the tools for any of the felonious purposes set forth in the Act may be inferred from all of the circumstances of the case. Intent is a state of mind and is not something that can be seen, felt or heard, but may be determined from the words and actions of the defendant, taking into considerations the time and place as well as all other relevant circumstances.

One of the officers making the arrest testified that he saw the two defendants on the North side of Manning Street and that they started to move away as the officers approached. Taking into consideration the time of night, the nature of the neighborhood, the distance they were from their home, their unwillingness to admit that they knew one another even though they were brothers-in-law, that burglar tools were found in their car and on the person of one of the defendants, and appellant's feeble explanation at the trial, we must conclude that the verdict was not against the weight of the evidence and was sufficient to establish their guilt beyond a reasonable doubt.

In the case of *Commonwealth v. DeWan,* 181 Pa. Superior Ct. 203, 124 A. 2d 139, Judge GUNTHER considered the Act concerning loitering and prowling. He said, "This Act was obviously intended to punish not

only those persons who at night are bent on peeping into the private affairs of citizens in their dwellings, but also those individuals who are found at or near dwellings without lawful purpose or reason and whose presence can only be explained in some preparation for or attempt at illegality or crime. The mischief prohibited is that intentional act, without legal justification or excuse, which has as its purpose injury to the privacy, person or property of another. It is that act which has for its purpose improper motive, evil design, depravity or perversion that is prohibited. Of necessity, therefore, each act must be considered under the peculiar facts and circumstances which give rise to the accusation."

It is not within the province of this court to pass upon the credibility of the witnesses, consider the testimony de novo, and reach an independent conclusion upon it. When a defendant agrees in a case of this kind to be tried by a judge without a jury the findings of the judge, if supported by competent evidence, are as binding upon us as the verdict of a jury, regardless of whether we would independently have arrived at the same conclusion: *Commonwealth v. Matteo,* 130 Pa. Superior Ct. 524, 197 A. 787.

The judgment of the court below is affirmed.