Commonwealth *v.* Dial, Appellants.

Argued November 12, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Daniel M. Berger,* with him *Berger & Kapetan,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 23, 1971:

This appeal raises the constitutionality of three searches and seizures, the fruits of which were introduced against appellant at his trial before a judge without a jury.

After indictments were returned against appellant, and before trial, he moved to suppress the evidence seized. The evidence was suppressed in one case, but the motion was refused in three cases which for convenience we will call No. 173, No. 235, and No. 303. No. 173 charged appellant with unlawful possession of narcotic drugs on June 28, 1968. No. 235 charged him with unlawful possession of narcotic drugs on July 11, 1968, and, in a second count, with maliciously loitering and prowling on the same date. In No. 303 he was charged with unlawful possession of narcotic drugs on August 2, 1968. In each case the evidence seized consisted of narcotics, together with a hypodermic needle in one case.

The appellant was tried before the court without a jury and found guilty on all counts except malicious loitering and prowling at No. 235. Appellant moved for a new trial and in arrest of judgment raising the

admissibility of the evidence seized. His motions were refused and he was sentenced as follows: On No. 173 he received five to twenty years; on No. 303 he received five to twenty years to run concurrently with the sentence on No. 173. Sentence was suspended on No. 235.

Nos. 173 and 303 involve searches conducted with warrants while No. 235 involves a search incident to an arrest. We will first discuss the cases in which warrants were used.

On No. 173 the police searched appellant's apartment. The lower court found that the police, armed with a warrant, knocked on appellant's door, announced that they were police and had a search warrant, heard running inside, and broke down the door. They found appellant hiding in the cellar. A search of the apartment produced the narcotics. Although appellant claims that he didn't run until the police broke down his door, the lower court was the trier of facts and its findings are supported by the testimony. See *Commonwealth v. Tabb*, 433 Pa. 204, 249 A. 2d 546 (1969).

The affidavit for the search warrant was made by a police officer in the following language: "Information received this date that subject Charles Dial of 2007 Webster Ave is selling cocaine and heroin on Centre Ave at Arthur Sts. and that he is packaging same in his residence. Subject Charles Dial is known to the narcotic squad as a dealer in narcotics having been arrested by Federal Agents three weeks ago for sale of heroin. Informant has supplied information in the past leading to the arrest of Meryl Bedford and Mary Hughes at 226 Dinwiddie St. and a large seizure of heroin and cocaine also the arrest of Robert Monroe at 2040 Forbes St. and a large seizure of marihuana. Affiant observed this subject on this date transacting business with known drug addicts on Centre Ave. in vicinity of Arthur St. in company with members of

narcotic squad, after this survelliance this warrant was obtained."

Appellant argues that the search warrant does not contain sufficient underlying facts to permit the magistrate to issue the search warrant and further that the execution of the warrant was unreasonable. We disagree on both points.

". . . [I]t is now well established that a magistrate may not constitutionally issue a search warrant until he is furnished with information sufficient to persuade a reasonable man that probable cause for the search exists. Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964); Commonwealth v. Alvarez, 208 Pa. Superior Ct. 371, 222 A. 2d 406 (1966) : . . . And his decision must be based solely on the information brought to his attention. Aguilar v. Texas, supra." *Commonwealth v. D'Angelo*, 437 Pa. 331, 336-37, 263 A. 2d 441, 444 (1970).

An affidavit for a search warrant may be based on hearsay information. In order for the hearsay to constitute probable cause, however, it must satisfy the two-prong test set forth in *Aguilar v. Texas*, supra: "[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.'" 378 U.S. at 114 (Emphasis added.)

The affidavit clearly indicates the circumstances showing why affiant relied on the informant. Those circumstances were the prior arrests resulting in large seizures of illegal narcotics and would justify an independent finding of reliability.

The second requirement of *Aguilar*, that the magistrate must be informed of some of the underlying cir-

cumstances from which the informant concluded that the narcotics were in appellant's apartment, is not met by the informant's tip. However, such underlying circumstances may be supplied by other allegations in the warrant which corroborate the information contained in the hearsay report. *Spinelli v. United States,* supra. In the present case corroborating evidence is supplied by affiant's own surveillance. Affiant averred that, on the same date the informant's information was received, he observed appellant "transacting business" with known drug addicts on Centre Avenue. At the suppression hearing affiant testified that the expression "transacting business" meant "dealing in dope." A common sense reading of the affidavit supports this testimony. Police surveillance thus corroborated a major part of the informant's information; to wit, that appellant was dealing in narcotics on Centre Avenue. This showed that the informant was not fabricating the story and supplies enough facts to support the informant's conclusion that appellant was preparing the narcotics in his apartment.

As pointed out in *Spinelli,* supra, *Draper v. United States,* 358 U.S. 307 (1959), provides a relevant comparison. In that case the informant's tip was followed and an arrest and incidental search disclosing narcotics was made. The informant described minutely the clothes the suspect would be wearing and the time of his arrival by train. Upon meeting the specified train the police saw a man whose dress corresponded exactly with the informant's description. Having personally verified that much of the information, the court held the police had probable cause to arrest the suspect.

See also, *McCray v. Illinois,* 386 U.S. 300 (1967), a narcotics case where an arrest on view and incidental search was upheld on information received. There the *Aguilar* test was applied to the officers' determina-

tion of probable cause to make the arrest, giving weight to the officers' personal observation of the suspect. Such observation did not include seeing narcotics being sold or carried, but only suspicious circumstances which, in our opinion, were less probative than "transacting business."

The execution of the warrant was reasonable. Pennsylvania, in determining whether an entry is reasonable, appears to have adopted the constitutional standards embodied in 18 U.S.C. §3109. *Commonwealth v. Newman,* 429 Pa. 441, 444-45, 240 A. 2d 795, 797 (1968). This statute states: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance. . . ." Here the officers came to the closed door, and announced their identity, authority, and purpose. When they heard sounds of running and the door was not opened, they were warranted in thinking that they were refused admittance and that an effort was underway to destroy evidence. They did not need to wait until the evidence was destroyed. *McClure v. United States,* 332 F. 2d 19 (9th Cir. 1964), *cert. denied,* 380 U.S. 945 (1965); *Masiello v. United States,* 317 F. 2d 121 (D.C. Cir. 1963).

On No. 303 the appellant was personally searched in a bar by officers armed with a search warrant. All the information given to the magistrate, who issued the warrant to search the person of appellant for narcotics, is contained in the affidavit for the warrant which reads [without any corrections] as follows:

"Charles Dial is a known narcotic addict and dealer who had been arrested by me twice before on the 25th of May and again on the 28th of June 1968 after raids on his house at 2007 Webster Ave and seizures of a large amount of narcotics: Also on the 30th of April I

arrested him on a bench warrant for sales to a Federal Narcotics agent.

"Also on the 11 of July Charles Dial was seen by Chester Howard and myself at Benny's bar talking with Lenord "SHANK" Rose and Arnold TWEETS Holliday known narcotics pushers and in the past weeks he's has been in the bar and costant meeting with the same pushers and others known or suspected narcotics addicts: Wendell Johnson, Donald Jackson etc. and the meetings has always been breif as is the patern of the narcotics pushers therefore I have reason to believe that he (Charles Dial) is still dealing in narcotics and request that a search warrant be issued for Charles Dial and also his house at 2007 Webster Ave."

This warrant was constitutionally defective because the affidavit gave the magistrate no facts or circumstances from which he could reasonably conclude that narcotics were probably on appellant's person. The first paragraph of the affidavit lists prior arrests, the last one of which was more than a month before the affidavit. The second paragraph avers nothing more than meetings in the bar with known or suspected narcotic addicts. Absent additional facts, such as observation of transactions between appellant and his companions, the affidavit presents the magistrate with nothing more than the officer's conclusions and will not support a search warrant under the Fourth Amendment to the United States Constitution.

We now turn to No. 235 which involves a search incident to an arrest. Appellant was arrested at 4:10 a.m. on July 11, 1968, at Roberts and Centre Avenues in Pittsburgh on a charge of loitering and prowling at nighttime.

The arresting officers had been ordered to patrol Centre Avenue. At approximately 2:00 a.m. they first noticed appellant and a woman companion. They ob-

served appellant and his companion at least six times before making the arrest. Every time the officers would go up or down Centre Avenue the appellant and his companion would go into a doorway or into an alley or cross the street to avoid the officers. The officers patrolled about four blocks on foot. They described the area as being mainly business on the ground floors with apartments with living quarters upstairs.

About the fifth time the officers saw appellant they told him and his companion to go home. Instead of going home, appellant and his companion went into an all-night market. The officers then continued their beat and on their return, 25 minutes later, appellant and his companion were standing on the corner of Roberts and Centre Avenues not far from the market. Again the officers told them to leave the area, but appellant said they were waiting for a bus and asked that they be let alone. At this point the officers placed them under arrest, took them across the street to a call box, and placed them against a wall. The officers then performed what they called "a shakedown on the fast search." In appellant's left pocket they found a bottle of pills and in appellant's right pocket they found a hypodermic needle. The pills later were found to be narcotics.

We believe that the arrest was lawful and that the search did not exceed the scope permitted incident to a lawful arrest. The loitering and prowling statute under which appellant was arrested and charged is very brief and reads as follows: "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor. . . ." Act of May 27, 1949, P. L. 1900, §1, 18 P.S. §4418.

In determining whether a lawful arrest was made, the test is whether the officers had probable cause to

believe that the appellant was loitering and prowling in violation of the statute. The fact that he was later acquitted does not make the arrest unlawful.

The officers' observations supported their belief that appellant was prowling around buildings used in part for dwelling purposes. Appellant and his companion hid in doorways, moved down an alley, and in other ways avoided the officers. The definitions of loitering and prowling given in *Commonwealth v. Hargrave*, 212 Pa. Superior Ct. 167, 240 A. 2d 570 (1968), and *Commonwealth v. DeWan*, 181 Pa. Superior Ct. 203, 124 A. 2d 139 (1956), encompass the behavior observed in this case over a period of two hours. Suffice it to say that the appellant and his companion were "moving slowly about, spending time idly and wandering in a stealthy manner," to use a few of the definitions contained in those two cases.

When a person is lawfully arrested, as appellant was here, the police have the right without a search warrant to make a contemporaneous search of the person of the accused for (1) weapons or (2) the fruits of or implements used to commit the crime. *Preston v. United States*, 376 U.S. 364 (1964). Clearly there are no fruits of the crime of loitering and prowling and no effort was made to show that any instruments or implements were sought. It follows that the only permissible warrantless search permitted in this case was a protective search for weapons. We need not determine the precise limitations of such a weapons search pursuant to a lawful arrest for we find that this search is valid even under *Terry v. Ohio*, 392 U.S. 1 (1968), a stop and frisk case, which sets forth the narrowest standards by which a constitutional self-protective search for weapons can be made.

So far as the testimony shows, the search was nothing more than a patting down of the outer surfaces of

appellant's clothing. The officers had observed appellant late at night, acting furtively and in a manner to suggest that he was engaged in some activity which he did not want the police to observe. When he was placed under arrest he resisted the officers. After being taken across the street, his woman companion tried to reach into appellant's pocket. Such activity taken cumulatively justified a reasonable belief that appellant was armed and presently dangerous to the officers. It was not only reasonable but wise for the officers, at this juncture, to pat down the appellant for possible weapons. *Terry v. Ohio,* supra. In so doing, they discovered a bottle of pills and a hypodermic needle which certainly bear some resemblance to possible weapons when felt through the pocket. This contraband, found pursuant to a lawful frisk, is admissible into evidence at the trial of appellant. *Cf. Sibron v. New York,* 392 U.S. 40, 79 (1968) (concurring opinion).

Had these cases been tried before a jury in a single trial we would feel impelled to grant a new trial in all cases because of the possible prejudice arising from the improper admission of the narcotics in No. 303. However, the cases were tried before an able and distinguished trial judge who, both at trial and in his opinion refusing post-trial motions, considered each case on its individual merits. A trial judge, unlike a layman, would have considered this evidence only in No. 303 and would not have given it any consideration in the other cases. For that reason we will affirm Nos. 173 and 235. It is also apparent that the Commonwealth has no evidence against appellant in No. 303 except the illegally seized narcotics. For that reason we will dismiss the charges at No. 303 rather than grant a new trial.

Judgments of sentence at No. 173 September Term 1968 and No. 235 October Sessions 1968 are affirmed,

and judgment of sentence at No. 303 November Sessions 1968 is reversed and the charges dismissed.

———

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted following a nonjury trial on three Bills: Bill No. 173, September Term 1968; Bill No. 303, November Sessions 1968; and Bill No. 235, October Sessions 1968. All of these indictments involved the illegal possession of dangerous drugs. The indictment at Bill No. 235 contained the additional count of malicious loitering and prowling.

The majority sustains the introduction into evidence of the fruits of the search in Bill No. 173; and holds that the search warrant in Bill No. 303 was constitutionally defective. I concur in the result as to these Bills. However, I respectfully dissent from the failure of the majority to suppress the evidence obtained pursuant to the search in Bill No. 235.

This Bill contained a two-count prosecution, one for possession of capsules of cocaine and the second for malicious loitering and prowling around a dwelling house at nighttime. After arresting appellant on the malicious prowling and loitering charge, the arresting officers conducted a search of appellant's person and found capsules of cocaine in his left pocket. At trial, the lower court found appellant not guilty of the charge of malicious loitering and prowling, but convicted him of possession of dangerous drugs. The judge had previously refused appellant's timely petition to suppress the evidence obtained pursuant to the search.

The question presented on appeal is whether there was probable cause for the malicious loitering and prowling arrest, and thus whether the drugs seized were properly admitted into evidence as the fruits of a

search pursuant to a lawful arrest.[1] The statute under which appellant was arrested provides as follows:

"Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars or undergo imprisonment for a period not exceeding one (1) year, or both." Act of May 27, 1949, P. L. 1900, §1, 18 P.S. §4418.

A close examination of the record reveals that, contrary to the views expressed by the majority, at the time of his arrest appellant was not maliciously loitering or prowling around a dwelling house. For approximately two hours before the arrest, the police officers involved observed appellant and his female companion in various locations. After seeing them for the fifth time, the officers, who were under orders to keep the streets clear of prostitutes and "dope boys", told them to go home. Instead, the couple went into an open, all-night market, about thirty yards from the spot where the arrest occurred. When the officers returned, they saw appellant and his companion standing on a street corner near the market. The female companion

---

[1] Appellant also argues that the malicious loitering and prowling section of The Penal Code, Act of May 27, 1949, P. L. 1900, §1, 18 P.S. §4418, is unconstitutionally void for vagueness. Cf., e.g., *Giaccio v. Pennsylvania*, 382 U.S. 399, 403, 86 S. Ct. 518, 520 (1966); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S. Ct. 618 (1939). He further argues that even if his arrest were lawful, the search of his person went beyond the scope permissible in an arrest for malicious loitering and prowling. Cf. *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968); *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883 (1964).

Although these claims may well be meritorious, since I conclude that the arrest in this case is clearly not sanctioned by the statute, I do not need to reach the constitutional issues at this time.

had a package from the store. The officers again told the couple to leave the area and were told that appellant and his companion "were waiting for a jitney." The officers testified that they told the couple that the jitney stand was across the street. At this point the couple told the officers "to leave them alone or something." They were then placed under arrest and taken across the street to a call box.

The facts thus clearly show that appellant was not maliciously loitering or prowling around a dwelling house at the time he was arrested.[2] In fact, he was not loitering or prowling at all. He had been standing at an intersection for two or three minutes prior to his arrest. There is nothing in the record to indicate that he was planning or doing anything unlawful at the time of his arrest. See, *Commonwealth v. Clinton*, 391 Pa. 212, 137 A. 2d 463 (1958), *reversing* 183 Pa. Superior Ct. 111, 127 A. 2d 780 (1956).

In *Commonwealth v. DeWan*, 181 Pa. Superior Ct. 203, 208, 124 A. 2d 139, 141 (1956), this Court defined the meaning of the section under which appellant was convicted: "This Act was obviously intended to punish not only those persons who at night are bent on peeping into the private affairs of citizens in their dwell-

---

[2] It should be noted that the arresting officers did not know that the offense of malicious loitering and prowling at nighttime applies only to dwelling houses. "Q. What is your understanding in terms of making an arrest as to what loitering is and what malicious prowling is? A. As loitering was explained to us, a person who has no logical reason to be in the vicinity. Malicious prowling is where a person having no logical reason to be in the vicinity is moving about places of business or entering private homes other than their own or with a guest. . . . Q. You have been instructed that malicious prowling includes loitering about open business establishments or closed business establishments? A. Closed business establishments. Q. Closed business establishments? A. Yes sir. Q. All right. And your instruction is not limited to the term that malicious prowling only involves dwelling houses? A. No, sir."

ings, but also those individuals who are found at or near dwellings without lawful purpose or reason and *whose presence can only be explained in some preparation for or attempt at illegality or crime.*" (emphasis added).

As was the case in *Commonwealth v. Clinton,* supra, "[t]he only element of this crime which the Commonwealth proved was that [appellant] was out at night." It is clear from the testimony that the officers suspected appellant of no conduct directed to "injury to the privacy, person or property of another", which is the mischief prohibited by the statute. *Commonwealth v. DeWan,* supra. Neither of the arresting officers ever testified that they even remotely thought that appellant was attempting to enter a dwelling house or do anything to invade the privacy of any person's residence. In fact they did not even know that this was a necessary element of the crime. See n. 2, supra. Their sole thought was that appellant was a drug addict and, therefore, should be kept off the streets. There is no indication either in the cases or the statute itself that suggests that this section was directed to such an "offense."

Though the police officers may have suspected appellant and his companion, they had no probable cause at the time of the arrest to believe that any misdemeanor was being committed in their presence. The Section under which appellant was arrested and convicted may not constitutionally be used to clear the streets of "undesirables." The statute is specific as to the type of behavior it seeks to prevent and it should not be extended. See, Act of May 28, 1937, P. L. 1019, art. IV, §58, 46 P.S. §558.

Therefore, I believe that the arrest was unlawful and the search incident thereto is invalid. The evidence obtained pursuant to the arrest should have been suppressed.

I would reverse the judgment of the court below as to Bill No. 235, October Sessions 1968 and order the charges dismissed.