Opinion by
 

 Cebcone, J.,
 

 Appellees Manduchi and Homsher were indicted for bookmaldng, violation of Section 607 of The Penal Code (18 P.S. 4607). The Commonwealth had obtained evidence against both appellees as a result of a search conducted on the premises owned by appellee Homsher.
 

 After a pretrial suppression hearing and argument thereon, the Court of Common Pleas of Lancaster County, Criminal Division, allowed appellees’ application for suppression of evidence on the ground that the affidavit did not contain sufficient probable cause. As a result of that ruling, the Commonwealth filed this appeal.
 
 [1]
 

 The lower court verified and approved a stipulation of counsel to the effect that the only information presented to the issuing authority, in determining whether probable cause existed, was that which is contained within the four corners of the sworn affidavit of Trooper Paul Mennig. The probable cause section of the affidavit, with which we are concerned, is set forth in the addendum to this opinion.
 

 The court below held that the affidavit did not set forth sufficient underlying circumstances from which the
 
 informer
 
 could conclude that the items in issue were where he said they were, and therefore concluded that the search and seizure warrant did not contain sufficient probable cause to justify its issuance. After a careful review of the attached affidavit and applicable law, we support the suppression order as entered by the court below.
 

 
 *565
 
 The affidavit attempts to establish probable cause based upon (1) information received by affiant from confidential informant; (2) from official records listing arrests and convictions; and (3) by surveillance.
 

 I. The validity of a search warrant based upon information received from confidential informants, i.e., “tips”, must be measured against the “two-pronged test” set forth in
 
 Aguilar v. Texas,
 
 378 U.S. 108, 114, 84 S. Ct. 1509 (1964) : “The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant .. . was ‘credible’ or his information ‘reliable’.” Our court in
 
 Com. v. Romershoe,
 
 215 Pa. Superior Ct. 246, 250, 257 A. 2d 341 (1969), stated: “. .. Aguilar sets forth two requirements which must be met in the affidavit before a search warrant can be properly issued: (1) the setting forth of underlying circumstances from which the
 
 informer
 
 concludes that the items in issue are where he said they were and, (2) the setting forth underlying circumstances from which the
 
 officer
 
 affiant concludes that the informer is credible or his information reliable”. See also:
 
 Com. v. D’Angelo,
 
 437 Pa. 331, 337, 263 A. 2d 441 (1970);
 
 Com. v. Smyser,
 
 205 Pa. Superior Ct. 599, 211 A. 2d 59 (1965);
 
 Com. v. Alvarez,
 
 208 Pa. Superior Ct. 371, 222 A. 2d 406 (1966);
 
 Com. v. Robinson,
 
 218 Pa. Superior Ct. 49, 54, 269 A. 2d 332 (1970);
 
 Com. v. Swierczewski,
 
 215 Pa. Superior Ct. 130, 132, 257 A. 2d 336, 337 (1969).
 

 The allegations contained, in paragraphs 1, 2, 3, 14, 16, and 21 of the affidavit consist merely of conclusions without factual foundation. There are no factual or underlying circumstances set forth to support the statement that Homsher is “taking horse bets at his home”, or for the statement of a partnership between Homsher
 
 *566
 
 and Manduchi, or for the statement that Manduchi comes to Homsher’s home and “takes action over the telephone there”, or that the informant has “personal knowledge of the betting at this address”, or for the assertion that “Manduchi has bookmaking connections all over the southeastern part of Pennsylvania”. There is no information as to the underlying source of the informant’s information. The affidavit does not relate that the informant saw the acts alleged to have taken place, or that the informant has dealt with or even met with the parties involved.
 

 The facts, as stated in paragraphs 2 and 12 of the affidavit, relating to informant’s information and to the officer’s surveillance, are in themselves neutral and deal with completely innocent behavior which, without more, are susceptible to no criminal implication or interpretation.
 

 The allegation that the informant has “personal knowledge” is likewise clearly a conclusion since it fails to disclose the source or facts surrounding the obtaining of that knowledge. As stated in
 
 Com. v. Swierczewski,
 
 supra: “This court has repeatedly held that a search warrant may not constitutionally issue upon an affidavit which fails to set forth substantiating facts and circumstances from which the magistrate might make an independent and detached appraisal of the probability that a crime has been or was being committed.” Similarly, the Supreme Court in
 
 Spinelli v.
 
 U.S., 393 U.S. 410, 416, 89 S. Ct. 584 (1969), stated: “Though the affiant swore that his confidant was ‘reliable’, he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that
 
 Aguilar’s
 
 other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a book
 
 *567
 
 making operation. We are not told how the FBI’s source received his information — it was not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused’s criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual’s general reputation.”
 

 II. The affidavit, in paragraph 4, sets forth that the affiant discovered a record against defendant Manduchi for gambling charges with convictions dating from 1952 to 1961. The last arrest was over ten years prior to the date of the issuance of the warrant and as such can add nothing to the Commonwealth’s assertion of present probable cause. See
 
 Com. v.
 
 Dial, 218 Pa. Superior Ct. 248, at 255, 276 A. 2d 314, 318 (affirmed in part and reversed in part), 445 Pa. 251, 285 A. 2d 125 (1971).
 
 [2]
 

 III. The remaining allegations of the affidavit fall under the general category of surveillance. Without
 
 *568
 
 reviewing each and every one of these allegations, it appears clear that none of them rise above a mere statement of the observance of various entirely innocent and noncriminal activities which at the most on some occasions place the defendant Manduchi at or near 540 Poplar Street, as well as at various other addresses. It is agreed that under
 
 Spinelli v. U.S.,
 
 supra, underlying circumstances may be supplied by other allegations in the warrant to corroborate information contained in the hearsay report of the informant. However, no such corroboration is presented in the instant affidavit. The surveillance reports in question do not corroborate any criminal or expected criminal activities, but are merely the repetitive listing of completely innocent events which fail to even suggest any connection to criminal activity.
 

 There is nothing in any of the statements contained in the affidavit to justify their utilization for the purpose of establishing probable cause for the issuance of the warrant in this case. In this connection, the
 
 Aguilar
 
 court, in referring to the case of
 
 Nathanson v. United States,
 
 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933), said: “. . . a warrant was issued upon the sworn allegation that the affiant ‘has cause to suspect and does believe’ that certain merchandise was in a specified location. Id., 290 U.S. at 44, 54 S. Ct. at 12. The Court, noting that the affidavit ‘went upon a mere affirmation of suspicion and belief
 
 without any statement of adequate supporting facts,’
 
 id., 290 U.S. at 46, 54 S. Ct. at 13 (emphasis added), announced the following rule: “ ‘Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from
 
 facts or circumstances
 
 presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.’ Id., 290 U.S. at 47, 54 S. Ct. at 13. (emphasis added.)”
 

 
 *569
 
 The order of the court below granting appellees’ application for suppression of evidence is affirmed.
 

 Wright, P. J., and Watkins, J., dissent.
 

 ADDENDUM
 

 For reference purposes, numbers have been assigned to each allegation contained in the search warrant.
 

 1. “That the facts upon which the affiant relies and verily believes are as follows: That on or about the 16th day of December, 1970, I received information from a reliable confidential informant that Fred Homsher, Jr., 540 Poplar St., Lancaster, Penna. employed as a retail salesman for the Liquor Control Board Stores, presently at the Marietta Store, is taking horse bets at his home.”
 

 2. “On 19 Jan. 71, I received information from a second confidential informant that he has observed racing papers with notations written on them while he was visiting the Marietta State Liquor Store. This informant also advised me that he has heard Fred Homsher, Jr. discussing horses and betting.”
 

 3. “On 3 Feb. 71, I received information from the first informant that Fred Homsher, Jr., is in partnership with Bichard Manduchi alca Bed Manduchi, a convicted bookmaker. I also was advised that Bed Manduchi comes to Fred Homsher’s home at 540 Poplar St., Lancaster and takes action over the telephones there. This informant has personal knowledge of the betting at this address and advised that Manduchi has bookmaking connections all over the southeastern part of Penna.”
 

 4. “I checked official records on Bichard Joseph Manduchi aka Bed Manduchi and received the following record for gambling charges: On 10-7-50, Traffic in Lotteries — convicted; 11-21-51, Bookmaking — Dismissed; 71-31-52, Bookmaking — convicted; 9-26-52,
 
 *570
 
 Bookmaking — convicted; 10-31-55, Federal Gambling Tax — convicted; 4-17-60, Gaming — convicted; 3-4-61, Bookmaking — Nolle Prossed; 3-12-61, Gaming — convicted.”
 

 5. “On 11 Feb. 71, I set np surveillance on 219 E. Walnut St., Lancaster, residence of Ruth Splain, girl friend of Red Manduchi and alleged residence of Manduchi and observed Red Manduchi drive west on Walnut St., in a brown Cadillac with vinyl top bearing Penna. Reg. number, 520-94P which is issued to Ruth Splain, 219 E. 'Walnut St., Lancaster.”
 

 6. “On 24 Feb. 71,1 followed Red Manduchi through Lancaster to Dorwart and Poplar Sts. and observed Manduchi park on Dorwart and Poplar Sts.; Manduchi then attempted to enter the rear door of 540 Poplar St. Manduchi then came back from the rear of the house and went around the front of the house. On this date, Manduchi stayed there until about 1430 hours when he was followed through the city to his residence at 219 E. Walnut St., Lancaster, Penna.”
 

 7. “On 26 Feb. 71, I followed Red Manduchi in the same Cadillac through the city to Fred Homsher’s house where Manduchi parked on Poplar St., in front of Homsher’s house.”
 

 8. “On 1 Mar. 71,1 observed Red Manduchi park the same Cadillac in front of 540 Poplar St.”
 

 9. “On 2 Mar. 71, I observed the same brown Cadillac, Penna. Reg. No. 520-94P parked in front of 540 Poplar St., Lancaster.”
 

 10. “On 3 Mar. 71, I observed Red Manduchi park the brown Cadillac, Penna. Reg. No. 520-94P in front of 540 Poplar St., and enter the door at 540 Poplar St.”
 

 11. “On 4 Mar. 71, I observed the brown Cadillac, Penna. Reg. No. 520-94P parked in front of 540 Poplar St.”
 

 
 *571
 
 12. “On 5 Mar. 71, I observed the brown Cadillac, Penna. Eeg. No. 520-94P parked in front of 540 Poplar St. Also on 5 Mar. 71, Cpl. Michael Eldridge was present at 542 Poplar St. and could hear voices from 540 Poplar St. Voices were male and female and the male voice said ‘No, that horse hasn’t run yet.’ A few minutes later, the male said, ‘Go back and see who’s there.’ This was in reference to Sgt. James Wenner and Eochelle T. Migdon being in the back yard at 542 Poplar St.”
 

 13. “On 8 Mar. 71, I observed the brown Cadillac, Penna. Eeg. No. 520-94P parked in front of 540 Poplar St., Lancaster, Penna.”
 

 14. “On 16 Mar. 71, Search Warrants were obtained for 540 Poplar St. Prior to service of warrant it was learned that Manduchi had changed his operation. Information stated that he would probably go to the TBA Club, 18 N. Water St., Lancaster, Penna.”
 

 15. “Surveillance on 17 Mar. 71, 18 Mar. 71, 19 Mar. 71, 22 Mar. 71, 23 Mar. 71 showed that Manduchi was going to the TBA Club during his usual operating time.”
 

 16. “On 24 Mar. 71, I was advised by the first informant that Manduchi had found out that the Police were watching him and was changing his operation.”
 

 17. “On 25 May 71, I followed Manduchi from his residence at 219 E. Walnut St., Lancaster to Dorwart St. At 1440 hours, Manduchi was observed leaving and getting into his Cadillac.”
 

 18. “On 26 May 71, I observed Manduchi’s Cadillac parked on Dorwart St.”
 

 19. “On 27 May 71, CIS I Eobert D. Lapp was advised of this operation and he checked 540 Poplar St. and observed Manduchi’s Cadillac with new Eeg. No. C98-655 parked on Poplar St.”
 

 20. “On 28 May 71, I observed the brown Cadillac, Penna. Eeg. No. C98-655 parked on Poplar St.”
 

 
 *572
 
 21. “On 1 June 71, I received information from a reliable confidential informant that Manduchi is now using Homsher’s house at 540 Poplar St. and that this is the place where bets are going. This informant has given information to the State Police in the past and has proven reliable. This informant has also personal knowledge on the betting and gambling in and around Lancaster. On this date, I followed Manduchi from his residence to Dorwart St. at 1140 hours.”
 

 “I believe the information received from all confidential informants to be true and correct as all information given by informants has been corroborated by surveillance. Also all informants do have personal knowledge on these activities.”
 

 [1]
 

 The Commonwealth may appeal from a pretrial suppression order where the effect of the suppression order is to result in a termination or conclusion of the prosecution, or where the prosecution of its case will be substantially handicapped because it cannot present all of its available evidence:
 
 Com. v. Taper,
 
 434 Pa. 71, 253 A. 2d 90 (1969) ;
 
 Com. v. Bosurgi, 411
 
 Pa. 56, 190 A. 2d 304 (1963) ;
 
 Com. v. Fisher,
 
 422 Pa. 134, 136, 221 A. 2d 115 (1966).
 

 [2]
 

 The Supreme Court’s reversal in
 
 Dial
 
 only pertained to one (No. 235) of three bills, and therefore, the discussion by our court of Bill No. 308 at pages 254, 255 retains its full validity. There we stated: “This warrant was constitutionally defective because the affidavit gave the magistrate no facts or circumstances from which he could reasonably conclude that narcotics were probably on appellant’s person. The first paragraph of the affidavit lists prior arrests, the last one of which was more than a month before the affidavit.” This statement is especially applicable to the criminal record listed in the instant affidavit, being more than ten years old, which certainly cannot be used for the purpose of supplying present probable cause necessary for the issuance of a valid search warrant. Cf.
 
 Com. v. Bove,
 
 221 Pa. Superior Ct. 345 (1972).