428 A.2d 200

COMMONWEALTH of Pennsylvania,

v.

**Stanley Eugene SCHASZBERGER, Appellant.**

**and**

COMMONWEALTH of Pennsylvania,

v.

**Carlton Eugene WALLICK, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed April 3, 1981.

John R. Gailey, Jr., York, for appellants.

John C. Uhler, District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellants, Stanley Eugene Schaszberger and Carlton Eugene Wallick were tried jointly before the Court of Common Pleas of York County on two gambling charges. Following their convictions, after a jury trial, both filed post-trial motions with the lower court. Following the denial of such motions, and sentencing, both appealed to our Court, and such appeals have been consolidated for purposes of our

consideration.  The appeals raise identical issues concerning claims that the lower court erred in denying motions to suppress evidence and in granting a Commonwealth application to extend the time for trial.

The record shows that on August 28, 1978, in the early evening, officers of the State Police entered the premises of the Girard Athletic Association and seized a number of gambling articles.  The troopers acted upon a search warrant they had obtained, based upon information supplied by a confidential informant who had disclosed to them the existence of gambling paraphernalia at the premises.  The officers entered the premises by the display of the informant's membership card, which caused those inside of the premises to unlock two separate doors to allow the entry of the officers, who were not in uniform.  Upon entry through the second door, into the premises of the Association, the officers identified themselves as members of the State Police and advised that a search warrant was to be served.  A subsequent search yielded various gambling devices and prizes.

Criminal complaints were filed against the Appellants on August 25, 1978.  After a preliminary hearing before a district justice on October 5, 1978, the cases of each were bound over for action by the Court of Common Pleas of York County.  Both Appellants were arraigned on December 15, 1978, and a joint trial was scheduled for late January, 1979.  On January 15, 1979, each of the Appellants filed a pre-trial motion to suppress evidence.  The lower court scheduled a hearing on such motions for January 29, 1979.  The Commonwealth filed an Application to Extend Time for Trial on January 24, 1979, prior to the expiration of the 180 day time limit for trial provided by Rule 1100 of the Pennsylvania Rules of Criminal Procedure.  The Appellants' motions to suppress evidence were denied by the lower court.  The lower court scheduled a hearing on the Commonwealth's Application to Extend, for March 5, 1979, at which time the lower court granted the Application to Extend and denied motions filed by the Appellants to dismiss the charges as a

result of the passage of the 180 day time limit provided in Rule 1100. The Appellants' jury trial took place on March 30, 1979, and resulted in convictions. This appeal arose from the Judgments of Sentence, following the denial of post-trial motions.

We first examine the Appellants' claims that the lower court erred in granting the Commonwealth's Application to Extend the time for the commencement of trial. In support of this argument, the Appellants maintain that the Commonwealth's Application was no more than a form petition of a type condemned by our Court in prior decisions, and further, contend that there was no proper justification supporting the lower court's approval of an extension of time for trial.

The Appellants cite *Commonwealth v. Ray*, 240 Pa. Super. 33, 360 A.2d 925 (1976) and *Commonwealth v. Antonuccio*, 257 Pa.Super. 535, 390 A.2d 1366 (1978) to support their contention that the Commonwealth's Application to Extend should have been dismissed since it was a "boilerplate" or "form" petition. Our own examination of the Application filed by the Commonwealth in these cases leads us to conclude, as did the lower court, that the Application is not suffering the defect which our Court condemned in the *Ray* and *Antonuccio*, decisions. In both of those cases, the prosecution merely filed form petitions which made the bare assertion that the Commonwealth had observed "due diligence" in its effort to have the case tried within the time limits prescribed by Rule 1100. No further details were provided. In the instant cases however, the Commonwealth's Application recited that the case had been listed for the January, 1979, sessions of criminal court but that it could not be called for trial during that session because of the outstanding pre-trial Application which had been filed by the defense on January 12, 1979. It further recited that short delays had occurred in the proceedings prior to that time as a result of the request of defense counsel for a short delay in the time of the scheduling of the preliminary hearing and the unavailability of the District Magistrate.

Clearly, the Commonwealth's Application to Extend in this case was not the "form" type our Court denounced in *Ray* and *Antonuccio*. Thus, we find no merit in the Appellants' arguments that the Commonwealth's Application was defective because of its form.

The Appellants also contend that the lower court erred in granting the Commonwealth's Application to Extend the time for trial. The lower court granted the extension in the instant case on the basis that the Appellants' pre-trial motions to suppress evidence could not be heard by the Court prior to the running of the 180 days. Further, the lower court held that the cases were tried in the first available period following the determination of the pre-trial motions.

█ It has been held that where there is a showing of "due diligence" by the Commonwealth, "judicial delay" will justify an extension of time under Rule 1100. See *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976) and *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976). In those cases it was established that an extension may properly be granted where there is a causal relationship between the "judicial delay" and the Commonwealth's inability to commence the trial despite due diligence. In *Commonwealth v. Shelton, supra*, the Court specifically noted that an extension may be granted in situations where judicial proceedings involving the prosecution of the charges are still pending or may be resolved so near the expiration of the mandatory period fixed by Rule 1100 that it may be possible that the trial may not be commenced within the period despite the Commonwealth's due diligence.

█ We find no error in this case in the lower court's finding that the Commonwealth exhibited due diligence in scheduling the Appellants' cases for trial within the time limits required by Rule 1100. Therefore, we reject the Appellants' second contention concerning the alleged violations of that Rule in their consolidated case.

The Appellant's second principal contention is that the lower court acted improperly in denying the motion to

suppress evidence. Again, the Appellants offer a dual argument in support of that position. First, they claim that insufficient probable cause was established for the issuance of the search warrant. Second, they claim that the warrant was improperly served by the State Police.

■ We first examine the claim that the Commonwealth did not establish sufficient probable cause to justify the issuance of a search warrant. The warrant in this case was based upon information supplied by an informant. The affidavit supporting the application for the warrant stated that the informant "... is a resident of York County, is gainfully employed, attends church, is a Veteran of the Armed Forces and has never been convicted of a crime." The affidavit further recited that on August 25, 1978, the affiant police officer met with the informant who stated that he had been in the Girard Athletic Association Club within the past week and observed "punchboards". Further, the affidavit recited that on August 25, 1978, the affiant officer and another Trooper asked the informant to enter the club and obtain proof of gambling occurring therein. Further, the source left the officers and returned to them approximately fifteen minutes later and produced two "punches" bearing numbers. These "punches" were identified as coming from illegal "punchboards". Further, the affidavit stated that the officer had been involved in the investigation of illegal gambling activities, including punchboards, for the past one and one-half years, and identified the punches as being from such punchboards. Finally, the affidavit recited that the club had a reputation for that type of illegal activities in the past, and that on June 3, 1977, a search warrant had been served at the club, resulting in the seizure of numerous gambling devices. We find that such information was clearly sufficient to establish probable cause for the issuance of the search warrant in this case.

In the case of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth the well known "two pronged test" for measuring the validity of information received from a confidential informant to estab-

lish sufficient probable cause justifying the issuance of a search warrant. The Supreme Court held that a magistrate must be informed of some of the underlying circumstances from which the informant concluded that the illegal activity or product was where he claimed it was, and also the underlying circumstances from which the officer, applying for the warrant, concluded that the informant was credible or that his information was reliable. See *Commonwealth v. Manduchi*, 222 Pa.Super. 562, 295 A.2d 150 (1972). It appears clear that both prongs of that test were met in the instant case. The magistrate was furnished with more than sufficient evidence to establish that the informant was a reliable individual residing within York County, was gainfully employed, attended church, was a Veteran and had never been convicted of a crime.[1] As to the second element, the officer informed the magistrate that the informant had produced punches from a punchboard shortly after he returned from a facility known in the past to have been a situs of gambling activities. All of these underlying circumstances certainly established probable cause sufficient to support the magistrate's issuance of the search warrant. Accordingly, we reject the claims to the contrary asserted by the Appellants.

The Appellants' second argument in support of suppression of the evidence concerned the manner in which the warrant was served in this case. As noted earlier, two police officers in plain clothes visited the building of the Girard Athletic Association. At hearings before the lower court it was established that the facility is a private social club for members only, licensed as such by the Pennsylvania Liquor Control Board. The club had a system whereby one could gain admittance only by showing a membership card to a person sitting behind a window at the door. When the officer showed such a card, the person in charge of the premises pushed a button which unlocked an outside door. After entrance was gained through that door, another elec-

---

1. See and compare *Commonwealth v. Gelfont*, 264 Pa.Super. 96, 399 A.2d 414 (1979).

tronic device unlocked the second door inside a vestibule, finally allowing entrance to the club premises. When the second door was opened, one of the officers announced he was a police officer and that he had a search warrant.

We believe the facts of this case are similar to those presented to this Court in *Commonwealth v. Regan*, 254 Pa.Super. 555, 386 A.2d 89 (1978). In that case, two officers obtained a warrant to search a certain apartment and went to that location with the superintendent of the building. The superintendent knocked on the door and, in response to a question, indicated he was there for the purpose of maintenance. After the door was opened, the officers stepped forward, announced their identity and purpose, and displayed the warrant. In *Regan*, we reversed an order of suppression issued by the lower court and held that police use of a ruse to initiate execution of a search warrant is permissible where it is followed by an announcement of authority and purpose, and by a peaceful entry. We followed a similar rationale in *Commonwealth v. McCarthy*, 257 Pa.Super. 42, 390 A.2d 236 (1978). In *McCarthy*, an officer wearing a hard hat and carrying a flashlight gained access to the defendant's premises by explaining that he wanted to see the gas meter. Once the door was opened, the officer identified himself and presented his search warrant before actually entering and initiating the search. While the Appellants in this case rely primarily upon the decision of the United States Supreme Court in *Sabbath v. U. S.*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) to support their position, our Court specifically noted in *Commonwealth v. Regan, supra*, that the *Sabbath* decision had been interpreted not to bar the use of deception without force to gain entry into a premises for the purpose of executing a valid search warrant. Since we find that the entry of the officers in this case was proper in accordance with our decisions in the *Regan* and *McCarthy* cases, we reject the Appellants' final contention that the lower court erred in refusing to suppress the evidence seized, merely as a result of the

manner in which the officers gained entry to the premises searched.

The judgments of sentence are hereby affirmed.