**Melchor Tafoya LOPEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 23263.

United States Court of Appeals Fifth Circuit.

Dec. 6, 1966.

Richard B. Perrenot, El Paso, Tex., for appellant.

Harry Lee Hudspeth, Asst. U. S. Atty., El Paso, Tex., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before JONES and DYER, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge:

On December 6, 1965, appellant was convicted on four counts of an indictment, the first two of which charged him with the importation and concealment of heroin in violation of 21 U.S.C. Section 174, and the last two with having departed and entered the United States without registering as a narcotics user and addict in violation of 18 U.S.C. Section 1407. He was sentenced to ten years on each of the first two counts, and three years on each of the last two counts, with all sentences to run concurrently.

Appellant contends that the trial court erred in denying his motions (1) to suppress the narcotics seized from him, (2) to suppress his confession, (3) to compel the Government to disclose the identity of the informants, and (4) for acquittal. In addition, he complains of the Court's action in refusing to instruct the jury as to the necessity for corroborative evidence as requested by him. Finding no error, we affirm.

The primary attack made by appellant is upon the validity of the search warrant which resulted in the seizure of incriminating evidence against him. After reviewing the record, however, we are satisfied that the complaint upon which the warrant was issued, furnished a sufficient basis for a finding of probable cause, as required by the Fourth Amendment to the United States Constitution.

The record reflects that on or about May 29th, 1964, Detectives Avalos and Barba of the El Paso Police Department received information from an informer, who theretofore had proven to be reliable, to the effect that appellant had gone to Mexico to obtain heroin. Later the officers received information from a different source of proven reliability that appellant had returned to El Paso with heroin, and would be "pushing it out pretty soon".

Appellant's house was kept under surveillance for several days after the foregoing information was received, and prior to his arrest. He was first seen on June 6, 1964 as he left the house with one Francisco Rodriguez, a known narcotics addict. The two men entered appellant's car and left with appellant driving. For a portion of the first block he drove on the wrong side of the street.

While still in the first block, appellant brought the car to a halt, made a throwing motion toward the street on the passenger's side of the automobile, and continued forward again. He then ran a stop sign and turned the corner. Detectives Avalos and Lavender, who had been watching the house, stopped appellant because of the traffic violations. Detective Avalos immediately returned to the area where the throwing motion had occurred. A little girl, approximately 10 to 15 years old, gave him the rubber tip of an eye-dropper she had found, containing a murky fluid, which upon being field tested, showed the presence of an opium derivative. Detective Avalos then called Detective Barba over the radio, gave him the foregoing information, and asked him to obtain a search warrant.

■ The testimony reveals that Detective Barba informed the Justice of the Peace who issued the search warrant that he had information concerning appellant from a "good source", one that had already made out "good cases"; that the informer had said that appellant had gone into the interior of Mexico to obtain a large quantity of heroin; that according to the informer, appellant had previously been pushing heroin, and that this heroin was for that purpose; that appellant's house had been under surveillance; and that appellant was in custody at the time with more heroin found on him. Detective Barba testified that he repeated to the Justice of the Peace the information given to him over the radio by Detective Avalos; and that the Justice of the Peace then prepared the complaint form, which he (Barba) swore to and signed.

In the complaint supporting the search warrant, the complaining officer stated his belief that appellant was in possession of heroin and paraphernalia at the address sought to be searched, based upon the following facts:

"I have been informed of the existence of the foregoing set out facts by reliable, credible, reputable and trustworthy citizen(s) of El Paso County, Texas, and further investigation".

Detectives Lavender and Avalos waited with appellant until Detective Barba and another detective arrived with the warrant. They then proceeded to appellant's house and searched it in his presence. Heroin, an eye-dropper, hypodermic needle, a ball of cotton wrapped in cloth, and a brown paper sack containing sugar, were found in an overcoat in a closet. When these items were discovered appellant exclaimed, "You found it". He was then taken to the police station where, after having been warned of his rights, he made a full confession, which was reduced to writing and signed by him.

The Supreme Court has on several occasions passed upon various problems relating to search and seizure, and the principles of law applicable to this case have been firmly established.[1]

■ In reviewing the validity of a search warrant, this Court is limited to a consideration of the same information that was brought to the magistrate's attention.[2] While it is doubtful that the affidavit, based largely upon hearsay, *alone* could have supported a finding of probable cause, we are of the opinion, and so hold, that the information obtained through "further investigation", and brought to the attention of the magistrate in the form of oral statements made by the complaining officer, *together with* that contained in his affidavit, satisfies the legal requirements.[3] The magistrate

---

1. See Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684.

2. Aguilar v. State of Texas, 378 U.S. 108 at 109, footnote 1, 84 S.Ct. 1509, at 1511, 12 L.Ed.2d 723 at 725, footnote 1.

3. Supra, note 1.

was told that the informant was a "good source" who had made "good cases" for the police department; that surveillance had been conducted of the apartment, and known addicts had been seen going in and out of it; and that appellant was then in custody with heroin found on him.

The Eighth Circuit upheld a search warrant under circumstances similar to those present here.[4] In that case the affidavit was considered insufficient, but the officer obtaining the warrant informed the magistrate that he had smelled marihuana outside the door. The Court said: "Aguilar v. State of Texas, supra, however, demands something more than this bare affidavit. The 'something more' was supplied by Officer McAdams in statement to the magistrate that he personally observed the odor of marihuana outside of the described premises. We feel as did the trial court, that this information before the magistrate justified the issuance of the search warrant. When this information is coupled with the affidavit indicating that the officer has additional outside information, presumably from an informer, there can be no doubt that sufficient probable cause exists to issue the warrant".

■■ The fact that the magistrate based his finding of probable cause in part upon information relayed to Detective Barba via radio from Detective Avalos does not affect the validity of the search warrant. Both officers were engaged in the investigation, and the observations of Detective Avalos constituted a reliable basis for the warrant applied for by Detective Barba. United States v. Ventresca.[5]

■ Appellant's contention that probable cause was not established, because the statements of Officer Barba to the magistrate were not under oath, is without merit. It is of no consequence that the oath was taken after the statements were made, rather than before.[6]

■■ Since we have concluded that the search, seizure and arrest were all in accordance with law, the written statement taken from appellant was not illegal. We are also of the opinion that the identity of the informers is not required when the sole purpose to be served is to attack the probable cause supporting a search warrant.[7] And, even if corroboration of the information received from the informers were necessary in this case (and we do not hold that it is), it is readily found in the form of the surveillance and the arrest of appellant with a small quantity of heroin.

■ In view of our conclusion that the statements made by appellant while in police custody were properly admitted, as were the items seized incident to the search warrant, it follows that the evidence is sufficient to sustain appellant's conviction under the first two counts.

■ Under the authority of Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct.

---

4. Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965), cert. denied 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966).

5. Supra, note 1.

6. The State of Texas looks to the substance and not to technical form. See Vaughn v. State, 146 Tex.Cr.R. 586, 177 S.W.2d 59, 60 (1943), in which the Court said: " * * * (T)here is a valid oath sufficient to form the basis of a charge of perjury when there is some form of an unequivocal and present act, in the presence of the officer authorized to administer the oath, whereby the affiant consciously takes on himself the obligation of an oath."

In In re Bennett, 223 F.Supp. 423, 427 (W.D.Mich, 1963), rev'd on other grounds, 338 F.2d 479 (6th Cir. 1964), the Court quoted from Black's Law Dictionary as follows: "Oath * * * An external pledge or asserveration, made in verification of statements made, or to be made, coupled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party, and to visit him with punishment if they be false."

7. Rugendorf v. United States, supra, note 1; Robinson v. United States, 325 F.2d 880, 883 (5th Cir. 1963).

**12**

311, 2 L.Ed.2d 321, it is not necessary that we consider the corroboration question raised with respect to counts three and four. Even if the evidence is insufficient on these two counts, a reversal of the conviction would not be required, because concurrent sentences were imposed on all counts.

The judgment of the trial court is

Affirmed.