Commonwealth *v.* Robinson, Appellant.

Argued December 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 18, 1970:

Appellant was convicted of conspiracy and aggravated robbery. The evidence upon which appellant was convicted included reference to pawn tickets and jewelry, which items were seized by the police pursuant to a search of appellant's home. Prior to trial, appellant had moved for the suppression of the pawn tickets and jewelry and testimony relating to where they were found, which motion was denied. From judgment of sentence, this appeal followed.

Two warrants are of concern here, an arrest warrant and a search warrant. The arrest warrant was obtained one week after the robbery charged. The search warrant was obtained several days later before a different magistrate than the one who had issued the arrest warrant.

The arrest warrant's probable cause section contained the following: "On or about [a certain date] in the County of Philadelphia, the accused committed the following acts: Robbery, while armed with a gun and with an accomplice, on the person of [the victim], inside his home, at which time they took [an amount of money]. Complainant [i.e., the victim] identify [sic] [appellant's] picture, positively as one of the two men who robbed him. . . ." Thus, the arrest warrant specified the source of the affiant's information.

The search warrant's probable cause section contained the following: "Subject named in this warrant [appellant] has been identified as one of two men who robbed [the victim] inside his residence at [a certain place] on [a certain date], at which time he took United States currency and [certain] items [of jewelry]." Unlike the arrest warrant, there is no in-

dication as to the source of the affiant's information nor did anything else in the warrant supply the source.

At the suppression hearing, in accordance with *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), the court was willing to admit into evidence not only the probable cause section of the search warrant but also any sworn testimony given by the police officer who obtained the warrant to the magistrate who issued it. The police officer could not, however, recall what conversation he had with the magistrate and, particularly, whether any further inquiry was made. The police officer was not asked, and we cannot know, whether he brought the arrest warrant to the magistrate's attention.

Armed with both the arrest and search warrants, two police officers went to appellant's two-story home at 11:30 or 11:40 p.m. one night. March 26-28 N.T. 123. When they arrived, appellant was not home. Appellant's wife admitted the officers. Although it is not absolutely clear, it appears the officers immediately executed the search warrant.[1] In appellant's bedroom, on his dresser, they found two pawn tickets lodged in

---

[1] "Q. When you entered the Robinson home with this search and seizure warrant, you conducted a search pursuant to the warrant, did you not "A. Yes." March 25 N.T. 18.

"Q. What time [did you arrive at appellant's residence]? "A. We arrived at his residence at 11:30 or 11:40 p.m. on the 27th. "Q. Who was there at the time? "A. [Appellant's] wife. "Q. Did she admit you? "A. Yes, she did. "Q. *What happened at that time?* "A. *We conducted a search of the premises* for the articles as described taken in the robbery." March 26-28 N.T. 123 [Emphasis added.].

"Q. There is no question that *the search in this case was made at about 11:00 o'clock* on June the 27th and that the arrest of [appellant] was not made until June the 28th the following morning "A. *That is correct. We arrived at the house.* It was before midnight on the 27th, *about 11:40 p.m."* March 26-28 N.T. 155 [Emphasis added.].

a book.[2]  Because the articles described on the tickets matched the articles stolen in some respects, the officers seized them.  After they finished searching, they waited for appellant.  "We went there on the 27th, late that night.  After we searched the premises and he wasn't there, we waited for him to come home, because we intended to arrest him.  He came home at 2:00 a.m. that morning."  March 25 N.T. 35.  "Q. Did you then arrest Mr. Robinson as he walked into the house?  "A. Yes. *He was up on the porch, coming up on the porch of his house.*"  March 26-28 N.T. 155 [Emphasis added.].

The proper question raised by these facts is a narrow one:  Was the probable cause section of the search warrant sufficient to sustain a finding of probable cause so that the warrant could lawfully be issued?

In answering this question, our purview is not unrestricted.  We cannot peruse the entire record of the case in order to substantiate the probable cause section of the search warrant.  We must confine ourselves to what the police officer wrote in his affidavit or orally swore to the magistrate.  *Commonwealth v. Crawley,* supra at 75-78, 223 A. 2d 889-890.  The dissent would not be so confined.  Regardless of whether the magistrate had enough information to constitute probable cause, the dissenting judges would sustain the warrant so long as they, on a search of their own, could gather from other warrants, police reports and any variety of sources that the officer indeed had probable cause.[3]  Such an approach would circumvent the constitutional protection afforded us by the Fourth Amendment, to have a "neutral and detached magistrate"

---

[2] It is not clear whether appellant's bedroom was on the first or second floor of appellant's house.

[3] Neither the Comomnwealth nor the court below has ever, during the course of this case, advanced such an argument.  The Commonwealth's argument is set forth below.

decide whether the police officer had probable cause to enter our homes. *Johnson v. United States,* 333 U.S. 10, 14, 68 S. Ct. 367 (1948). We cannot do away with the requirement that the magistrate decide whether probable cause exists and substitute in his stead a police officer. The Fourth Amendment does not permit a police officer to investigate and to judge the propriety of his investigation, too.

The frailties of the instant search warrant are apparent. The probable cause section fails in two respects: (1) It lacks any statement which would support a finding that the affiant had made observations of his own or that he had received his information in a reliable manner. *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969). (2) It also lacks any statement which would support a finding that the informant was credible, i.e., that his information that appellant was involved in the crime was to be believed. *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964).

The Commonwealth argues in its brief that "[w]hile the detective could not remember whether he had told the magistrate anything beyond the information contained in the warrant . . ., it is clear that the language of the warrant itself, fairly read, informed the magistrate that appellant had been identified by his victim." If indeed such an inference could reasonably be drawn from the warrant, we would agree that (1) and (2) above were satisfied, since a victim's information is both reliably received and credible for the purpose of establishing probable cause.

However, it would require more than a "fair reading" to conclude that the police officer's information was in fact obtained from the victim. It would require extraordinary insight. Although we realize that the truth of the matter is that the police officer had probable cause, to permit such a warrant to stand would

in a vast number of cases, subvert the constitutional requirement of probable cause.[4]

The dissenting judges would, alternatively, sustain the search of appellant's home as incident to a lawful arrest. The doctrine, however, as it was understood at the time of the search, was that "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Stoner v. California,* 376 U.S. 483, 486, 84 S. Ct. 889, 891 (1964). See *Agnello v. United States,* 269 U.S. 20, 46 S. Ct. 4 (1925). This limitation, binding upon the states, was applied in the careful opinion of Mr. Justice JONES in *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966).[5] In *Ellsworth,* two hours after the defendant was arrested and taken into custody, his room was searched and articles were seized. The Court concluded that the search was invalid because, among other reasons, it was not "contemporaneous" with the arrest. The Pennsylvania authority relied upon by the dissenters, *Commonwealth v. Harris,* 429 Pa. 215, 239 A. 2d 290 (1968), not only fails to support them but requires a contrary result. In *Harris,* the defendant was arrested immediately upon entering a house. The Court, through Mr. Justice EAGEN, took pains to point out that the defendant's automobile was parked on the street "almost directly" in front of the house. The police officers who arrested the defendant then searched his automobile, presumably incident to their arrest. The Court concluded, however, that the second half of the limitation applied. The

---

[4] The principles this Court announces, we hope, are neutral. We cannot adopt one set for those we believe guilty and another for those we believe innocent. If appellant is indeed guilty, regardless of whether the evidence seized is admitted, the victim will testify that appellant robbed him.

[5] *Ellsworth* was handed down several months *before* the instant search. Its principles, of course, were understood long before.

automobile was not in the "immediate vicinity" of the arrest, albeit it was parked directly in front of the house.

The Supreme Court has recently reaffirmed the *Ellsworth-Harris* interpretation of *Stoner*. In *Vale v. Louisiana*, 399 U.S. 30, 90 S. Ct. 1969 (1970), the Court reviewed a search conducted of the defendant's house allegedly incident to his arrest "as he reached the front steps." The Court held that "[i]f a search of a house is to be upheld as incident to an arrest, the arrest must take place *inside* the house . . . not somewhere outside— whether two blocks away, . . . twenty feet away, . . . or on the sidewalk near the front steps." Id. at 33, 34, 90 S. Ct. at 1971. This, the Court said, has always been the law, *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034 (1969), notwithstanding.[6]

*Ellsworth* and *Harris*, law clearly known to the police at the time of the search, govern this case. Apparently, two hours before the arrest was made, the police officers conducted an extensive search of appellant's home, reaching into his bedroom. After they finished, they waited for his arrival. Thus, the search failed, under *Ellsworth*, to be "contemporaneous" with

---

[6] The doctrine of search incident to arrest was restated by the Court in *Chimel*. Justice STEWART, writing for the Court held the following: Police officers may "search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . [I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." Id. at 763, 89 S. Ct. 2040. Regardless of whether *Chimel* is retroactive, the instant search fails under the doctrine as it was understood at the time of the search. The strictness of cases like *Ellsworth* and *Harris* indicated that *Chimel* would soon be forthcoming. 395 U.S. at 768 and n. 14, 15, 89 S. Ct. at 2042 and n. 14, 15.

the arrest. Moreover, appellant was arrested as he was "coming up on the porch of his house." Such an arrest does not justify a search reaching into appellant's bedroom. Such a search fails, under *Harris* (and *Vale*, in particular), because it was not in the "immediate vicinity" of the arrest.

Because the warrant was invalid and because the search was not incident to an arrest, we vacate judgment of sentence and grant a new trial.

WRIGHT, P. J., dissents.

———

DISSENTING OPINION BY WATKINS, J.:

I dissent and would affirm the judgment of sentence.

The principal complaint of the defendant is the failure of the court below to suppress evidence secured from the home of the defendant at the time of his arrest in that there was not probable cause for the issuance of the search warrant by the magistrate.

More and more it is being brought home to reviewing courts that common sense and not technical nit picking must be applied to the problems created by the application of law enforcement officers for search and seizure warrants. Public clamor in criticism of judicial softness, in the face of mounting crime statistics, has reached a new high.

A recent article in the Philadelphia Inquirer by George Wilson of the Editorial Staff entitled "We're Much Too Lenient on Criminals" ended on the following note: "The victims of crime are the forgotten people in the American system of justice as presently administered."

In this case, the victims were seized at gunpoint in their own home and tied up while the house was ransacked and cash and valuable jewelry taken. The kind of character identified by the victim as the perpetrator,

now walking the streets, can be judged by the testimony that at the time of his return to the house and his arrest, the officers noticed a man's zircon ring on his finger which was described as one of the items of jewelry stolen. When the officers tried to remove it, he screamed out in apparent pain so that they incarcerated him with the ring on his finger. When they sought the stolen article in the cell, the ring was gone and he explained that someone must have stolen it from him while he slept.

There are two answers to the complaint concerning the issuance of the search warrant in this case. The first is that under the facts in this case it most certainly can be treated as a search incidental to an arrest by service of a body warrant and second, that under the facts in this case, probable cause did exist for the issuance of the search warrant.

"This right to search and seize without a warrant extends to things under the accused's immediate control such as a house, or an automobile." *Commonwealth v. Harris,* 429 Pa. 215, 218, 239 A. 2d 290 (1968). It is the law that the circumstances surrounding the situation where a search may be made incidental to an arrest must be reasonable as to the area searched and the time between the search and the arrest. "In determining the test of reasonableness, all the attending circumstances must be considered. The test cannot be stated in rigid and absolute terms and each case must be decided on its own facts." *Commonwealth v. Harris,* supra, page 219.

The decision in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), is not retroactive. It was handed down in June, 1969, while Robinson took place in 1966 so that the case falls within the less restrictive rules of *Harris v. United States,* 331 U.S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098 (1947)

and *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430 (1950).

But *Chimel* is distinguishable from *Robinson* in that there was a search warrant and a body warrant while in *Chimel* there was no search warrant and the body warrant was admitted by the State to be defective, 395 U.S. at 754 (n.1).

Even if the search warrant in *Robinson* was held to be defective, the cases are distinguishable on their facts. The search in *Chimel* took place in the defendant's home while he was away, while in *Robinson,* the defendant arrived some time while the search was in progress or shortly thereafter. It is, therefore, arguable that the search was within the "zone of search" permitted in *Chimel.* In *Chimel,* there was resistance to the search while in *Robinson* there was cooperation; and in the *Chimel* case the evidence was so concealed that the officers directed the wife to "physically move contents of the drawers from side to side so that they might view any items that would have come from the burglary", while in the instant case the evidence was in plain view.

It is equally true that probable cause for the issuance of a search warrant depends largely on the facts of the individual case. The law is clear that the warrant must set forth facts sufficient for the magistrate to decide objectively that probable cause for its issuance exists. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). However, in *U.S. v. Ventresca,* 380 U.S. 102, 108 (1965), which holding was specifically reaffirmed in *Spinelli,* the Supreme Court of the United States made it clear that the language setting forth probable cause is to be read generously and not in technical terms. The Supreme Court said at page 108: "If the teachings of the

Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." These principles have been repeatedly reaffirmed; a recent case being *United States of America v. Bridges,* 419 F. 2d 963 (8th Cir. 1969). In that case, the Court said at page 966: "We recognize that the affidavit can also be read as stating that the informant's purchases were not recent and that the informants, who told Patch that Bridges sells large quantities of heroin every week and that he obtains his supply on the West Coast, were not the informants who made the purchases. Read in this light, the Commissioner would be obliged to refuse the search warrant, or to make further inquiry before issuing it. This is true because, under such a reading, there would be no basis upon which the Commissioner could judge the validity of the informant's statements to Patch or the validity of Patch's conclusions. But, the Commissioner was satisfied with the affidavit and we cannot say that a common sense reading of it required a result other than that reached." In the instant case, reading it generously, it is a statement of the detective that an eyewitness, the victim, whose name appears in the paragraph, identified the defendant as one of the robbers. There is no reason to infer that the detective received information from any source not disclosed.

On June 24, 1966, as part of the investigation of the case, the victim was shown fifteen photographs from which he identified Felton Robinson as one of the robbers. It should be noted that there were only two eyewitnesses to the robbery, the victim and his wife, and his wife was unable to make an identification. Acting on the identification of the defendant by the eyewitness victim, the investigating officer prepared information for a body warrant and a search warrant.

On June 24, 1966, the arrest warrant was executed and issued by the magistrate. However, the detective did not have the search warrant executed and issued until June 27, 1966, and because of this delay the warrants were issued by different magistrates.

The arrest warrant contained the following information: "On or about 17th of June 1966, in the County of Philadelphia, the accused committed the following acts: Robbery, while armed with a gun and with an accomplice, on the person of Louis Golson 50 C/M res: 6227 No. 16th Street, inside his home, at which time they took $4792.00 in US Currency. Complainant identify Felton Robinson picture, positively as one of the two men who robbed him on 6/17/66 all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the pertinent Acts of Assembly."

The probable cause section of the search warrant contained the following: "Subject named in this warrant has been identified as one of two men who robbed Louis Golson, 50 years, colored male, inside his residence at 6227 North 16th Street, on June 17, 1966, at which time, he took United States Currency and above-named items."

The explanation by the detective from the record as to why he delayed in securing the search warrant was that the body warrant could be used and an arrest made anywhere and at anytime, while he had to make

certain as to the home address. He testified as follows: "A. First, I would ascertain positively that the man lived at the premises for which I am going to search. A body warrant I can serve anywhere, at anytime, but it is useless to get a search warrant if the man does not positively occupy the place."

When the detective was certain what house was to be searched, he sought the issuance of the search warrant. At the time he had with him the body warrant already issued and although the record shows he does not remember any additional information he gave the magistrate to come within the authority of *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), there is a great likelihood that he did give the magistrate the information contained in the body warrant.

The investigator together with another officer went to the home of the defendant on June 27 armed with both warrants and were admitted to the defendant's house by his wife who, according to the record, was most cooperative with the officers. The defendant was not home at the time so the officers waited for his return. The defendant returned at approximately 2:00 a.m., June 28, 1966, at which time he was arrested by the two officers.

During the interim period of time, from entry to arrest, exactly when the premises were searched by the officers is not clear. They found two pawn tickets which led to the recovery of certain items identified by the victim as his property taken at the time of the robbery.

In view of the language contained in the probable cause section of the warrant it is only reasonable and not guesswork to infer that the identification was made by the victim, who was an eyewitness to the events that took place and the contents of the warrant as hereinabove set forth constitutes probable cause for its issuance.

However, it has been repeatedly held that a search warrant which is contemporaneous with an arrest and in close proximity to the arrest is lawful. In the case of *Henderson v. United States*, 405 F. 2d 874 (5th Cir. 1968), the Court held at page 875: "Probable cause for the arrest existed independently of the fruits of the search; the arrest was perfected within ten minutes of the search and seizure; and therefore, it is immaterial in these circumstances that the search preceded the arrest."

Here it is impossible to fix the time between search and the arrest. At most, the house was entered at 11:30 p.m., June 27, and the arrest was made at 2:00 a.m., June 28. The actual search took place sometime after the entry and the officers remained in the home until the arrival and arrest of the defendant. The court below properly denied the motion to suppress.

The defendant also complains of the seizure of pawn tickets found sticking out of a book in plain view in one of the rooms searched. Both pawn tickets plainly described items contained in the search warrant as property belonging to the victim and taken at the time of the robbery. Once the ticket described an item that is listed in the search warrant, it becomes a common sense and logical item for investigation and its seizure becomes necessary and lawful.

The defendant contends that they could not be seized because the tickets were not named in the warrant. This is without merit. Evidential material discovered in plain view in the course of lawful activities of the police may be introduced into evidence. *Harris v. United States*, 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968). See also, *Fuller v. United States*, 407 Fed. 2d 1199 (D.C. Cir. 1967), cert. denied, 393 U.S. 1120 (1969); *Warden v. Hayden*, 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967).