Commonwealth, Appellant, *v.* Thorne.

Argued June 13, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

reargument refused December 29, 1972.

*Robert G. Bigham,* Assistant District Attorney, with him *Oscar F. Spicer,* District Attorney, for Commonwealth, appellant.

*Robert E. Campbell,* Public Defender, for Lester Courtney Thorne, appellee.

*Henry O. Heiser, III,* with him *Swope & Frazee,* for Ronald Lee Thorne, appellee.

*Gary E. Hartman,* with him *Eugene R. Hartman,* for Clarence Junior Thorne, appellee.

OPINION BY HOFFMAN, J., December 11, 1972:

The Commonwealth, appellant in this case, conceded in oral argument before this court that the inad-

missibility of the suppressed evidence would not substantially handicap the prosecution of this case. An examination of the suppression hearing record indicates that this is true. In light of *Commonwealth v. Bosurgi*, 411 Pa. 56, 63, 190 A. 2d 304 (1963) and *Commonwealth v. Pomponi*, 436 Pa. 565, 568, 259 A. 2d 872 (1970), such an admission requires that this appeal be quashed without determining the validity of the search.

---

DISSENTING OPINION BY CERCONE, J.:

Lester Courtney Thorne, Ronald Lee Thorne, and Clarence Junior Thorne, brothers, were arrested and charged with burglary, larceny, and receiving stolen goods, all charges arising out of a burglary of two bowling alleys near Gettysburg, Adams County, Pennsylvania.

Evidence in support of the charges was obtained as the result of a warrantless search by the Maryland State Police as follows: On March 21, 1970, acting on information received from the Virginia State Police, Maryland State Police officers went to the home rented by Faye Browning and Lester Browning (Lester Thorne) in Colora, Maryland. Mrs. Browning was then at home and signed a written consent to a search of the premises by the officers, which consent was witnessed by one Arlene Weigle, a periodic occupant of the home. Accompanied by Mrs. Browning and Mrs. Weigle, the officers searched the first and second floors. On the second floor they found a locked door which was identified as Ronald Thorne's room. Mrs. Weigle stated that she had shared the room for the night and had accidentally locked the door on her way out of the room that morning. The officers testified that with Mrs. Browning's permission they forced the door open; Mrs. Browning and Mrs. Weigle testified

that Mrs. Browning forced it open by bumping up against the door.

The officers entered the room, made a search thereof, and seized some evidence of the crimes. Several weeks later they returned on April 11, 1970, finding Mrs. Browning and Mrs. Weigle in the process of moving out of the premises with none of the rooms being locked and all the goods gathered in one room. Mrs. Browning again consented in writing to a search of the premises and the officers took with them certain other items of evidence, but granting Mrs. Weigle permission and authority to remove some items to her home in Dillsburg, Pennsylvania. The Maryland State Police then informed the Pennsylvania authorities via teletype as to the items Mrs. Weigle was permitted to remove to Dillsburg. Subsequently, upon request by the Pennsylvania authorities, Mrs. Weigle voluntarily relinquished those items to them at her home in Dillsburg.

After hearing on defendants' motions to suppress, the court below suppressed "any evidence secured from the room occupied by Ronald Lee Thorne at the Colora, Maryland premises and as to any evidence secured from Mrs. Arlene Weigle at her Dillsburg, Pennsylvania residence". The Commonwealth has appealed.

At the hearing on the motions to suppress, it was established that the lease for the premises in Colora, Maryland was in the names of Faye Browning and Lester Browning (Lester Thorne); that Mrs. Browning, with the exception of the amount of $50.00, had paid the rent from November 1969 to April 1970; that Ronald Thorne paid no rent and made no contribution toward the payment of the rent; that there was no understanding as to how long he was to stay at the home. Mrs. Browning testified: "I was told that they (Ronald and Clarence Thorne) would spend some time there, that they would be there sometimes, sometimes

they wouldn't be there." Mrs. Browning also testified that Clarence and Ronald first slept on the couch or on a mattress on the floor; later her four children who had been using two separate bedrooms were placed in one bedroom, and Ronald then began using the bedroom in question. He placed a lock on the bedroom door and told her she shouldn't bother going into it and he would see it was cleaned.

The issue now is whether under these circumstances Mrs. Browning had the right to consent to a search of the room occupied by Ronald. We first start with the proposition that as a co-tenant, especially as one paying the rent for the premises, Mrs. Browning did have authority to consent to a search of the leased premises. As stated in *United States v. Sferas*, 210 F. 2d 69, 74 (7th Cir. 1954) : ". . . where two persons have equal rights to the use or occupation of premises, either may give consent to a search . . ." The question now is: Was Mrs. Browning's authority to give valid consent to the search of the leased premises limited by Ronald's use of a bedroom and his placing a lock on the bedroom door with instructions for privacy?

A mere gratuitous guest who had no enforceable right to occupancy or possession of the premises and whose occupancy was solely at the largess of Mrs. Browning, Ronald Thorne could not, by placing a lock on the door of the room permitted to be occupied by him and by demanding privacy, foreclose and prevent Mrs. Browning's dominion over that room of which she was the co-tenant and for which she was paying the rent without any contribution by Ronald Thorne or in fact, without any contribution by his brother Lester Thorne, the co-tenant. The holding in *Weaver v. Lane*, 382 F. 2d 251 (7th Cir. 1967), is here applicable. In that case the Circuit Court reasoned and held as follows: "The District Court speaks of the petitioner's having 'rented' his room in the Carroll home. The re-

spondent disputes that finding. The issue becomes important in connection with recovery of clothing petitioner had worn early on the morning of November 18, 1960. Mrs. Carroll granted permission to Detective Garner to search the room which the petitioner had been using. He took possession of bloodstained trousers which were admitted in evidence at the trial. The District Court held that these were illegally seized.

"Mr. Weaver testified that he had been staying with the Carrolls for about a week, on an arrangement that he would stay with them for a few days until he could find a place to rent, that he would leave when he was ready. He stated that he did pay 'rent' in that he provided them with a carpet for their living room and that he occasionally helped with money for groceries when the Carrolls were short. There was no set limit on his stay as to time or allocation of the gift of the carpet or funds for groceries.

"We find no basis for holding that Mr. Weaver was a tenant with such exclusive right to the room in which he had been sleeping as to oust his hosts, the actual occupants of the house, from authority to grant consent to a search. Mrs. Carroll was not in the same limited position as the hotel room clerk in Stoner who authorized search of a hotel room rented on specific terms to an occupant who was temporarily absent. At worst, Mrs. Carroll had an equal right with Mr. Weaver to access, and she could give consent to a search of a room in her home. United States v. Sferas, 7 Cir., 1954, 210 F. 2d 69, 74-75; United States v. Cudia, 7 Cir., 1965, 346 F. 2d 227, 229, cert. den., 382 U.S. 955, 86 S. Ct. 428, 15 L. Ed. 2d 539, rehrg. den., 382 U.S. 1021, 86 S. Ct. 612, 15 L. Ed. 2d 536."

It can be seen from a reading of the above quotation that the court there distinguished *Stoner v. California,* 376 U.S. 483 (1964) (also relied upon by defendants in the instant case), which held that a hotel

clerk could not authorize a search of a room rented to and paid for by the registered occupant. *Stoner v. California* is likewise here distinguishable for the same reasons it was distinguishable from the facts of *Weaver v. Lane* as to which facts the instant case, as already stated, is strikingly similar.

The other cases relied upon by defendants are likewise distinguishable either because the person whose room was searched occupied a contractual relationship which prevented such search without his consent (*Chapman v. U.S.*, 365 U.S. 610 (1961)—tenant; *Commonwealth v. Ellsworth*, 421 Pa. 169 (1966)—paying hotel guest; *Commonwealth v. Storck*, 442 Pa. 197 (1971)—bailor), or because the person consenting to the search had no legal interest in the premises searched (*United States ex rel. Cabey v. Mazurkiewicz*, 431 F. 2d 839 (3d Cir. 1970)—consenting wife was not a lessee or co-lessee of the premises and that portion of the premises searched was occupied by the husband who was the sole lessee of the premises; *Reeves v. Warden*, 346 F. 2d 915 (4th Cir. 1965)—consenting mother was a mere guest in her daughter's home and therefore could not given valid consent to a search of a room occupied therein by her son; *Beach v. Superior Ct., San Diego County*, 11 Cal. App. 3d 1032, 90 Cal. Rptr. 200 (1970)—consent by joint possessor of apartment, not shown to be co-tenant, could not be given as to that portion to which her right of possession or control did not extend).

Under the facts in this case Mrs. Browning, as co-tenant of the premises, and in fact the rent-paying tenant of the premises, had the authority to consent to a search of the entire leased premises including that portion permitted to be occupied by Ronald Thorne, and therefore the two searches and seizures based on her consent were valid.

Defendants further complain as to the legality of the surrender by Mrs. Weigle to the Pennsylvania authorities at her home in Dillsburg, Pennsylvania of the items the officers permitted her to remove from Colora, Maryland. This complaint is answered by the observation that the items in question could have been seized by the Maryland officers at the time of their search of the Colora, Maryland home, and then turned over by them to the Pennsylvania authorities; instead, they permitted and authorized Mrs. Weigle to remove the same to her Dillsburg, Pennsylvania home and then instructed the Pennsylvania police as to their location. The evidence clearly indicates that the officers had not relinquished their control over the items in question which could have been seized at the time of the search of the Maryland home; the items were not overlooked or generally relinquished to the control and disposition of Mrs. Weigle; they were merely the subject of an authorization and permission to Mrs. Weigle to remove the same to her home in Dillsburg, followed by an immediate notification to the Pennsylvania authorities as to their location. Mrs. Weigle had no authority, and the Maryland police did not purport to give her any authority, to retain the goods as her own; her right of possession was strictly limited to that of a conduit for delivery of the goods to the Pennsylvania authorities; she was bound by the circumstances under which she had been given the right of removal to relinquish them, as she did, to the Pennsylvania police, and therefore, such delivery was not dependent for its efficacy upon her ownership of the goods or her right to give consent to such relinquishment.

No contention has been raised in the briefs or oral argument of the parties as to the appealability of the suppression order. If it appears clearly from the record that a suppression order will not substantially handicap the prosecution, the order is not appealable.

In *Commonwealth v. Kloch,* 221 Pa. Superior Ct. 324, 292 A. 2d 479 (1972), the record showed affirmatively the sufficiency of other evidence readily available to obtain a prosecution.

In the instant case, the lower court suppressed "any evidence secured from the room occupied by Ronald Lee Thorne at the Colora, Maryland premises and as to any evidence secured from Mrs. Arlene Weigle at her Dillsburg, Pennsylvania residence." However, there does not appear in the record any clear manifestation of other evidence available to the prosecution. Recollections differ as to what transpired at oral argument before this court when counsel, without being given any notice of the appealability issue, answered a question as to the availability of other evidence. Such an answer should not be dispositive of the issue whether the suppressed evidence may "mark the difference between success and failure in the prosecution. . . ." *Commonwealth v. Bosurgi,* 411 Pa. 56, 63, 190 A. 2d 304, 308 (1963). If there is no motion to quash, the appeal should go forward unless the record shows clearly the existence of other evidence readily available, and manifestly sufficient, to obtain a conviction. The record does not establish the availability of such other evidence.

Accordingly, I would reverse the order of the court below granting defendant's motion to suppress.

WRIGHT, P. J., and PACKEL, J., join in this dissenting opinion.