Commonwealth, Appellant, *v.* Deren.

374

Argued March 21, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Martin J. King,* Assistant District Attorney, with him *Stephen B. Harris,* First Assistant District Attorney, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellant.

*John A. Van Luvanee,* with him *William H. Eastburn, III,* and *Eastburn and Gray,* for appellee.

OPINION BY PRICE, J., March 31, 1975:

This appeal comes before the court following a lower court order suppressing evidence obtained pursuant to a search warrant. The Commonwealth appeals, claiming at oral argument that the suppression order is in error and that its case will be substantially prejudiced if the suppressed evidence is not admitted. We are again faced with the difficult problems which arise when the Commonwealth appeals such an order. We conclude that the appeal is proper and the evidence should be admitted.

At approximately 11:00 p.m. on March 31, 1971, Mrs. Jean Dutton was assaulted and robbed by an intruder in her home. As Mrs. Dutton was putting out the trash, the intruder grabbed her from behind and forced her into the house and into the bedroom. There he ripped off her clothes, warning that he would kill her if she screamed and aroused her children. Her attacker was wearing a simple Halloween mask that covered the region around his eyes. Mrs. Dutton managed to pull this mask down during the struggle. She later identified appellee as the man who attacked her, and pointed out appellee's house to the police.

The evidence that was suppressed consisted of samples of hair from appellee's head. The Commonwealth intended to show that a comparison of appellee's hair and hair found at the scene indicated that the hair found at the scene could have come from the appellee's body.

The case of *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), presents the law now applicable as to when a suppression order is appealable by the Commonwealth. While *Bosurgi* has been previously interpreted, we believe a re-examination and re-definition of the directives of that case is needed.

The *Bosurgi* court stated: "From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order

of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all* its available evidence. In the first situation, the element of finality inherent in the order of suppression is apparent and sufficient to render the order appealable. In the second situation, although the element of finality in the order is not so apparent, it is nevertheless present. Without a right of appeal in the Commonwealth in the second situation, the Commonwealth is completely deprived of *any opportunity* to secure an appellate court evaluation of the validity of the order of suppression which forces the Commonwealth to trial without *all* of its evidence. The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents. In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we too often forget and neglect to preserve the rights of society which, too, are entitled to consideration. An appellate review of the validity of the order of suppression cannot harm the defendant whereas the denial of the right to such review does harm the Commonwealth. In *both* factual situations the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth in both situations." 411 Pa. at 63-64, 190 A.2d at 308.

We interpret this to mean that any time the Commonwealth alleges that its case will be either terminated and concluded or substantially prejudiced by a suppression order, we must review the suppression order only on its merits. Stated another way, when the District Attorney from one of the counties of this Commonwealth

directs an appeal from the suppression of evidence, we must accept such an appeal as the Commonwealth's good faith certification that the case will be terminated or substantially prejudiced by such an order, and determine only if the suppression was proper.

To apply any other test could *permanently* exclude evidence even if it was improperly suppressed. Such a result is contrary to our function in this matter, which is to ascertain that all evidence received is proper and to insure that the rights of all parties are protected. The District Attorney, representing the people of this Commonwealth, and he alone, has the right and duty to present the Commonwealth's case with all the legally available evidence that he, in his judgment, believes to be substantially necessary to the case.

In the case of *Commonwealth v. Rose,* 211 Pa. Superior Ct. 295, 235 A.2d 462 (1967), the Commonwealth appealed a suppression order and Judge JACOBS, writing for the majority, stated: "[s]ince appellee has not filed a motion to quash, we will assume that the suppression order will substantially handicap the Commonwealth and hear the appeal." 211 Pa. Superior Ct. at 296, 235 A.2d at 463. When we are correctly willing to *assume* substantial prejudice we must also be willing to accept the Commonwealth's stated position that it *will be* substantially prejudiced by the suppression order.

The case at bar is exactly such a situation where the Commonwealth is substantially prejudiced because it cannot present all its available evidence and is deprived of the opportunity of testing the validity of the suppression order.[1] An examination of the record indicates that the hair sample evidence was improperly suppressed. In

---

1. It is well settled that in a criminal case the Commonwealth may appeal adverse rulings only where the question is purely one of law. *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Melton,* 402 Pa. 628, 168 A.2d 328 (1961). That requirement is satisfied in the present case.

its memorandum opinion, the lower court concluded the search warrant was improperly issued because the magistrate lacked probable cause, and because the warrant did not limit with sufficient particularity the amount of property to be seized. This determination is at odds with the facts.

In the present case, there was much testimony given to the magistrate between the date of the commission of the crime and the date of the issuance of the search warrant. At the time the warrant was issued, the magistrate could examine both the written search warrant affidavit and the unrecorded *sworn* oral testimony of the officers seeking the warrant. *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973).[2] However, the oral testimony here was not given under oath, and could not be utilized to help determine probable cause. Notwithstanding, an examination of the written affidavit alone clearly establishes probable cause on its face.

The affidavit reveals that the victim, Mrs. Jean Dutton, was able, during the struggle, to remove the mask her assailant was wearing and she recognized appellee. She later pointed out appellee's house to the police, indicating she knew appellee before the incident. These facts were more than sufficient to establish that appellee was the attacker which in turn established probable cause for the search and seizure.

The affidavit then states, "[y]our affiant located certain latent palm prints and hair specimen were found at Timberlyn Farms." The lower court determined that the statement concerning hair samples was unparticularized and of no probative value, thus not supporting prob-

---

2. This procedure has since been changed by Pa. R. Crim. P. 2003(a) which states: "[n]o search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."

able cause. This flies in the face of the eyewitness identification of appellee, which established probable cause.

As the Supreme Court stated in *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971), the language in the affidavit must be tested and interpreted in a common-sense and realistic fashion. *See also Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352 (1972). Judge WATKINS noted in his dissenting opinion in *Commonwealth v. Robinson*, 218 Pa. Superior Ct. 49, 269 A.2d 332 (1970) : "More and more it is being brought home to reviewing courts that common sense and not technical nit picking must be applied to the problems created by the application of law enforcement officers for search and seizure warrants." 218 Pa. Superior Ct. at 57, 269 A.2d at 336.

A common-sense reading of the affidavit indicates that on its face, there was sufficient information to determine that hair was found at Timberlyn Farms and that the hair might have come from the person identified by the victim as the attacker. This constitutes adequate probable cause.[3]

The lower court also determined that the scope of the property to be seized was ill-defined. The affidavit described the evidence to be seized as "Specimen of Head Hair Sample of the person of Henry T. Deren." We disagree with the lower court and conclude that this was an adequate description of the evidence to be seized. As to discussion over whether a "sample" or "specimen" indicates only one hair as opposed to several hairs, we will simply refer to the above stated rule which mandates a

---

3. An examination of all the facts indicates that the investigating officers did not find the hair specimen at the scene of the crime. They were only made aware of the hair after the victim's clothes had been sent to the Federal Bureau of Investigation's lab, and the report was received some months later. However, even if we assume that the incomplete facts given on the affidavit may have been slightly misleading, the affidavit still indicates probable cause for the magistrate to issue the warrant.

common-sense interpretation of the affidavit, free from nit picking.

Of more useful concern is that the search be conducted in a reasonable manner. The decision as to the reasonableness of the search and seizure is the proper province of the court and will be determined on the facts and circumstances of each case. *Cf. Commonwealth v. Cockfield,* 411 Pa. 71, 190 A.2d 898 (1963) ; *Commonwealth v. Anderson,* 208 Pa. Superior Ct. 323, 222 A.2d 495 (1966). Here, the police snipped eleven strands of appellee's hair from eleven different locations on appellee's head. The record indicates that the search and seizure was totally reasonable.

In addition to the above points, we should briefly mention several other considerations dealing with the validity of the search and seizure warrant and the legality of seizing hair samples. First, it is well established that the use of bodily identification evidence, such as hair samples, does not violate the privilege against self incrimination. *United States v. Allen,* 337 F. Supp. 1041 (E.D. Pa. 1972). Although some courts have required a search warrant before seizure[4] and others have permitted the seizure of the hair samples without a warrant,[5] there is no question that hair samples may be taken.[6] As there was a valid search warrant in the present case, we need not here decide under what circumstances a warrant will be required and in what situations the police may act without one.

Second, approximately four months elapsed between the arrest and the time when the sample was actually taken. An examination of the facts reveals that the police were not aware of the need for the hair sample until sometime after the arrest when the FBI lab re-

---

4. *United States v. Allen,* 337 F. Supp. 1041 (E.D. Pa. 1972).

5. *United States v. D'Amico,* 408 F.2d 331 (2d Cir. 1969).

6. *See also United States v. Cox,* 428 F.2d 683 (7th Cir. 1970) ; *Commonwealth v. Neal,* 34 D. & C. 2d 365 (1964).

port, indicating that a hair specimen was found on the victim's clothing, was received. At that time, appellee was a patient in a mental hospital, and the District Attorney and the police deemed it advisable to wait until appellee was discharged to take the sample. The search warrant was sworn out just prior to the August 17th preliminary hearing and was executed immediately after the hearing, while appellee was represented by his attorney. Appellee now raises the question of timely probable cause to support the search and seizure.

The probable cause which supports the search warrant must indicate that the evidence to be seized is presently in the possession of the defendant. *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Shaw,* 444 Pa. 110, 281 A.2d 897 (1971). In other words, the probable cause must not be "stale" as it applies to the evidence involved, but must reflect present conditions. For example, in the case of *Commonwealth v. Shaw, supra,* a warrant issued on December 8, 1968, supported by probable cause dealing with events from April, 1968, was declared invalid because there was no present probable cause to indicate that the evidence was still in defendant's possession.

However, the case at bar does not involve such a situation. There was no question that the evidence to be seized was still in the appellee's possession. The fact that the crime was committed and the victim identified appellee as her attacker is sufficient to establish probable cause for the search and seizure of the hair sample. This probable cause would not become stale but would continue to support the evidence of the commission of a crime and would be equally valid at the time of arrest or four months later. Appellee was in no way prejudiced by the delay, and the Commonwealth's procedure was in no way unreasonable.[7]

---

7. The same result would occur where the police, sometime after the arrest, secure a defendant's fingerprints or take a blood

Lastly, there was some question as to the validity of the magistrate giving the oath after receiving the information. However, this procedure, while unusual, has no adverse effect on the validity of the oath, the acceptability of the testimony, or the determination of probable cause. *United States ex rel. Boyance v. Myers,* 270 F. Supp. 734 (E.D. Pa. 1967) ; *Lopez v. United States,* 370 F.2d 8 (5th Cir. 1966) ; *Cf. Commonwealth v. Beddick,* 180 Pa. Superior Ct. 221, 119 A.2d 590 (1956).

For the above reasons we reverse the suppression order and allow the Commonwealth to use the evidence derived from the hair sample comparison. Anytime the Commonwealth asserts substantial prejudice as a result of a suppression order, our court will determine the validity of the order on its merits.

HOFFMAN, J., did not participate in the consideration or decision of this case.

___

sample for comparison with evidence found at the scene of the crime. In fact, the record indicates that appellee's finger and palm prints were taken at the same time the hair sample was taken to compare with palm prints and fingerprints found at the scene.

___

DISSENTING OPINION BY SPAETH, J. :

Although the propriety of taking this appeal was not briefed by either party, it was raised by this court at the oral argument.[1] I believe the appeal should be quashed.

At approximately 11 :00 p.m. on March 31, 1971, Mrs. Jean Dutton was assaulted and robbed by an intruder in her home. The intruder grabbed her from behind as she was putting out the trash and carried her into the bedroom. There he ripped off her clothes, warning that he

___

1. This court reserves the right to raise the issue of its own jurisdiction even where that issue has not been raised by either party. *See, e.g., Davidyan v. Davidyan,* 229 Pa. Superior Ct. 495, 327 A.2d 139 (1974) ; *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa. Superior Ct. 527, 323 A.2d 359 (1974).

would kill her if she screamed and roused her children. The man was masked with a simple Halloween mask that covered the region around his eyes. Mrs. Dutton managed to pull this mask down during the struggle. She later told the police that appellee was the man who attacked her, and he was arrested on the basis of that information.[2]

The evidence that was suppressed consists of samples of hair from appellee's head. In the amended bill of particulars the Commonwealth stated that "[a]n analysis of [appellee's] hair and comparison with hair samples found at the scene determine that the latter hair sample could have come from the body of [appellee]."

As a general proposition it may be said that the jurisdiction of an appellate court is limited to the review of "final orders." If the order is "interlocutory" some special authorization conferring jurisdiction must be found. With specific reference to this court, the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. III, §302, 17 P.S. §211.302, provides that "[t]he Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . . except such classes of appeals as are by any section of this act within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court." In *Commonwealth v. Rucco*, 229 Pa. Superior Ct. 247, 249-250, 324 A.2d 388, 389 (1974), it is said: "Our appellate jurisdiction extends to *non-final* orders only where: (a) an appeal from an interlocutory order

---

2. At the hearing on the motion to suppress Mrs. Dutton testified that when she pulled her attacker's mask down she got a good look at him and saw that he was someone she knew; she went on to say that the attacker was appellee, whom she had met the year before when he and she were invited to an Easter dinner. Also, there is in the record an affidavit for a search warrant reciting that Mrs. Dutton told the affiant police officer "that her children played frequently with [appellee's] children and she was thus familiar with where [appellee] resided. . . ."

is authorized by law: Appellate Court Jurisdiction Act, supra, §501(a), 17 P.S. §211.501(a); (b) a lower court has certified the issue involved in the interlocutory order as "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter . . ."; Id., §501(b), 17 P.S. §211.501(b); or, (c) the appellee has waived an objection to the jurisdiction of the court: [Id.], §503(a), 17 P.S. §211.503(a). Regarding the latter two instances of jurisdiction over appeals from interlocutory orders, we may, in our discretion refuse to exercise that jurisdiction."

It would seem that an order suppressing evidence is interlocutory: it is a pre-trial order, and it does not preclude the Commonwealth from proceeding with the trial. On this analysis the order would be appealable only if (a) appeal "is authorized by law" or (b) the court below has appropriately certified the order. Appellate Court Jurisdiction Act, supra. Since there is no "law", i.e. statute, authorizing appeal from an order suppressing evidence,[3] appeal would only lie if the order has been appropriately certified. In fact, however, the cases have taken a different tack, and the question of whether an order suppressing evidence may be appealed has been decided by considering whether under the circumstances of the particular case the order has "such an attribute of finality" as to make it proper to treat it as though it were a final order. The origin of this approach is *Commonwealth v. Bosurgi* 411 Pa. 56, 63-64, 190 A.2d 304, 308 (1963), where it was said: "From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution

---

3. As for example there is when the question is whether the court below has jurisdiction over the parties or subject matter. Act of March 5, 1925, P.L. 23, §1, 12 P.S. §672.

or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all* its available evidence . . . In *both* factual situations the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality as to justify the grant of the right to appeal to the Commonwealth in both situations."[4]

The typical case of a Commonwealth appeal allowed under part (a) of the *Bosurgi* rule is where the crime is one of possession of contraband. The (usually unstated) premise is that without the fruits of the search the Commonwealth cannot prove that the defendant ever had the contraband; thus an element of the crime would be lacking and the Commonwealth would not be able to prove its case. *Commonwealth v. Pugh,* 223 Pa. Superior Ct. 112, 296 A.2d 864 (1972) (possession of heroin) ; *Commonwealth v. Manduchi,* 222 Pa. Superior Ct. 562, 295 A.2d 150 (1972) (bookmaking paraphernalia) ; *Commonwealth v. Hernley,* 216 Pa. Superior Ct. 177, 263 A.2d 904, *cert. denied* 401 U. S. 914 (1970) (illegal lottery) ; *Commonwealth v. Payton,* 212 Pa. Superior Ct. 254, 243 A.2d 202 (1968) (bookmaking) ; *Commonwealth v. Rose,* 211 Pa. Superior Ct. 295, 235 A.2d 462 (1967) (possession of narcotics).[5]

---

4. After quoting this passage, the majority states: "We interpret this to mean that any time the Commonwealth alleges that its case will be either terminated and concluded or substantially prejudiced by a suppression order, we must review the suppression order only on its merits." *Ante* at 377. That this (or any) court "must" act at "any time" one party to a case "alleges" something rather surprises me, and I do not believe *Bosurgi* so held. *See also Commonwealth v. Kloch,* discussed *infra* at 388.

5. This case disposed of the issue of the Commonwealth's ability to bring the appeal by noting that appellee did not object. However, as pointed out earlier in this opinion, the court is still free to raise the issue on its own motion.

Cases within part (b) of the *Bosurgi* rule involve situations where without the fruits of the search the Commonwealth might be able to prove its case, but probably not. Thus in *Commonwealth v. Wright,* 411 Pa. 81, 190 A.2d 709 (1963), the court allowed an appeal where although "[i]nformation given the police pointed the finger of suspicion at the defendant," *id.* at 83, 190 A.2d at 710, the court below had suppressed stolen money found in the defendant's apartment. And see *Commonwealth v. Cockfield,* 411 Pa. 71, 190 A.2d 898 (1963) (arson murder; defendant had quarreled with and threatened decedent; search of defendant's car disclosed gasoline and charred toilet paper) ; *Commonwealth v. Bosurgi, supra* (burglary of jewelry store; "undisclosed source" tells police defendant seen "attempting to sell watches;" search of defendant discloses watches later identified as from store; "evidence suppressed may well mark the difference between success and failure in the prosecution").[6]

Cases where the appeal has been quashed because it appears that despite the order suppressing evidence the Commonwealth will be able to prove its case are unusual, perhaps because fewer of these cases are appealed. In *Commonwealth v. Thorne,* 223 Pa. Superior Ct. 122, 299 A.2d 370 (1972), the appeal was quashed

6. The *Bosurgi* rule has also been applied in appeals from orders suppressing confessions (as distinguished from orders suppressing real evidence). *Commonwealth v. Rowe,* 445 Pa. 454, 282 A.2d 319 (1971) ; *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1969) ; *Commonwealth v. Fisher,* 422 Pa. 134, 221 A.2d 115 (1966) ; *Commonwealth v. Smith,* 212 Pa. Superior Ct. 403, 244 A.2d 787 (1968) (appeal quashed where suppressed statement did not amount to a confession). *Cf. Commonwealth v. Whitehouse,* 222 Pa. Superior Ct. 127, 130, 292 A.2d 469, 470 (1972) (*allocatur refused,* 222 Pa. Superior Ct. xxxii) : "The Commonwealth was in no position in the face of this [suppression] order to appeal the court's finding that the warrant was defective as it was in a position to proceed with trial on the statements not suppressed. . . ."

because counsel for the Commonwealth conceded at oral argument that it should be. In *Commonwealth v. Kloch*, 221 Pa. Superior Ct. 324, 292 A.2d 479 (1972), not cited by the majority, the results of a blood alcohol test had been suppressed as tainted by an illegal arrest but the appeal was quashed because there was plenty of other evidence to prove the defendant's drunk driving (as indeed was demonstrated by the ensuing conviction: *see, Commonwealth v. Kloch*, 230 Pa. Superior Ct. 563, 327 A.2d 375 (1974)).

In the present case the evidence that has been suppressed would allegedly prove that hair found at the scene of the crime "could have come" (in the Commonwealth's words) from appellee's head. Mrs. Dutton, however, is apparently prepared to testify, as she did at the hearing on the motion to suppress, that appellee assaulted her, and that she knows he did because she got a good look at him and recognized him as someone she knew. Thus the suppressed evidence is not needed to supply an element of the crime. Nor does it appear that the evidence is needed to reinforce other evidence that by itself is probably insufficient. Nothing suggests that Mrs. Dutton's testimony would be insufficient to carry the case to the jury; to the contrary, it appears quite sufficient; and in any case, it is by no means clear that evidence of the hair test would work any reinforcement. The Commonwealth's offer is to have an expert witness compare hair taken from appellee's head with hair found at the scene. If after making the comparison the expert would only say that the hair found at the scene "could have come" from appellee's head he would not have said much. It seems implicit, moreover, that on cross-examination he would have to acknowledge that the hair at the scene might not have come or that he could not tell whether it did in fact come from appellee's head, in which event, depending upon what further cross-examination elicited, the testimony might

be so speculative as to be inadmissible. *State v. Holt,* 17 Ohio St.2d 81, 246 N.E.2d 365 (1969) (reversible error to admit opinions that " 'the [hair] samples are similar and *are likely* to be from the same source' " (emphasis in original)).

Thus it cannot be said, as it was in *Commonwealth v. Bosurgi, supra,* either (a) that the order suppressing the hair found at the scene "will result in a termination or conclusion of the prosecution," or (b) that because of the order the Commonwealth will be "substantially handicapped because it cannot present *all* its available evidence . . . . The evidence suppressed may well mark the difference between success and failure in the prosecution." *Id.* at 63, 190 A.2d at 308. Accordingly, under the *Bosurgi* rule the appeal should be quashed.

JACOBS, J., *joins in this opinion.*